*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★  ★  ★  ★  ★  ★  ★

## OPINION

No. 04-07-00387-CR

Jonathan **RODRIGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 928877
Honorable Monica E. Guerrero, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Alma L. López, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:   October 1, 2008

AFFIRMED

Jonathan Rodriguez was convicted of assault with bodily injury and sentenced to one year in jail, probated for eighteen months, and a $1,000 fine. On appeal Rodriguez complains the trial court violated his constitutional rights by admitting the complainant's out-of-court statements into evidence. We affirm the trial court's judgment.

## BACKGROUND

On June 22, 2005, San Antonio Police Officer Greg Hovis was dispatched to the scene of a reported assault. Officer Hovis, the State's only witness, testified that when he arrived at the house, he found the complainant, M.G., and her child in the driveway. M.G. was crying and she appeared "shaken up" and "very scared." She told Officer Hovis she had been "assaulted" by her boyfriend and showed him an injury to her lip. M.G. said she had "escaped" from inside the house. She did not provide further details as to how the assault had occurred.

When Officer Hovis's backup arrived, they entered the house and M.G. told the officers "he" was probably in the master bedroom. Officer Hovis found Rodriguez asleep in the master bedroom and immediately detained him.[1] The officer then interviewed M.G., who told him Rodriguez had locked her in the bedroom with him, hit her, and kicked her. M.G. said she ended up in a fetal position between the bed and crib. She told Officer Hovis the assault happened at approximately 11:00 a.m., but she had waited about one hour for Rodriguez to fall asleep before she could call police. She showed Officer Hovis bruises on her face and arms, as well as black eyes and a cut lip. Photographs of her injuries were introduced into evidence. Officer Hovis testified Rodriguez told him he and M.G. had an argument about the child and "it got a little out of hand." The officer testified that, based on M.G.'s injuries, he believed her version of the event.

Rodriguez was the only other person to testify. He told the jury he heard M.G. yelling at their child and went to investigate. He testified he saw M.G. grab the child, pull her hair, and spank her. According to Rodriguez, M.G. was "out of control," so he grabbed her by the arms and held her to prevent her from using "force" on the child. M.G. attempted to swing at him but Rodriguez

---

[1] The record does not indicate whether Rodriguez was removed from the house immediately or was present during the later questioning of M.G.

prevented her from using her arms. When shown photographs of the injuries, Rodriguez admitted he may have caused the bruises on M.G.'s arms but stated he had "no recollection" about her black eye or the injury to her lip. He later denied causing any injuries in the photographs and denied beating or kicking her.

## DISCUSSION

In his first point of error, Rodriguez complains he was denied due process of law under the Fourth and Fourteenth Amendments to the United States Constitution when Officer Hovis testified as to M.G.'s out-of-court statements. In his second point of error, Rodriguez complains admission of the statements violated his Sixth Amendment right to confront the witness against him. Rodriguez enumerates as a separate point of error the harm caused by the admission of Hovis's testimony. Rodriguez does not argue how the Fourth and Fourteenth Amendments are implicated and cites no legal authority for his first point. Therefore, we will consider only whether Hovis's testimony violated Rodriguez's Sixth Amendment right under the Confrontation Clause, and whether the error, if any, was harmful.

As a preliminary matter, we consider the State's assertions that Rodriguez failed to preserve error. Defense counsel objected on both hearsay and confrontation grounds each time the State elicited M.G.'s out-of-court statements. Counsel's first objection resulted in a lengthy argument, outside the presence of the jury, during which Rodriguez's objections and their grounds were discussed extensively and were overruled. The State contends Rodriguez failed to preserve error as to "several" of M.G.'s statements, arguing the objections were not made until after the witness gave the complained of answer. We disagree. On two occasions when counsel objected after the answer, the question did not call for hearsay and only the answer was objectionable. We find only one

instance where the State's question called for hearsay and the record reflects Officer Hovis gave his one word answer immediately before counsel objected. However, the reporter's record also reflects the trial was contentious and there are numerous occasions when several people were speaking at the same time. In light of the record, we cannot say with any assurance that counsel's objection was not made contemporaneously with the witness's response. Counsel timely objected to the admissibility of M.G.'s statements to Officer Hovis, stated the specific grounds for the objections, and obtained a ruling. That is all that is required to preserve error. *See* TEX. R. EVID. 103(a)(1); TEX. R. APP. P. 33.1(a); *see also Walker v. State*, 180 S.W.3d 829, 835 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

The State also contends Rodriguez waived error by cross-examining Officer Hovis about M.G.'s statements. A defendant does not waive his previous objection to testimony by cross-examining the witness about his direct testimony. *See Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993) (holding "error is not waived when the evidence is brought in later in an effort to meet, rebut, destroy, deny or explain the improperly admitted evidence"). Here, trial counsel vigorously cross-examined Officer Hovis about his testimony. In some questions, trial counsel repeated statements the officer claimed M.G. made. On other occasions, Officer Hovis repeated the statements in response to counsel's questions. However, the record clearly demonstrates trial counsel was attempting to meet, rebut, destroy, deny, and explain evidence that had been admitted over his previous objections. We will therefore consider the merits of Rodriguez's complaints.

### *Applicable Law*

We review the trial court's decision to admit evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 390-92 (Tex. Crim. App. 1991) (op. on reh'g). We will

uphold the trial judge's decision unless it is outside the zone of reasonable disagreement. *Id.* When deciding cases involving the federal constitution, Texas courts are bound by United States Supreme Court decisions interpreting the federal constitution. *State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998). The United States Supreme Court has held that "[t]estimonial statements of witnesses absent from trial [may be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). In *Vinson v. State*, the court of criminal appeals suggested a non-exhaustive list of factors to consider in determining whether the statements were testimonial:

> 1) whether the situation was still in progress; 2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; 3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; 4) whether the questioning was conducted in a separate room, away from the alleged attacker; and 5) whether the events were deliberately recounted in a step-by-step fashion.

252 S.W.3d 336, 339 (Tex. Crim. App. 2008) (citing *Davis*, 547 U.S. at 829-30). We review *de novo* the question of whether a statement is testimonial or non-testimonial. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

### *Application of Law to Facts*

In the case of domestic disputes, "'[o]fficers called to investigate . . . need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim.'" *Davis*, 547 U.S. at 832 (quoting *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 186 (2004)). When Officer Hovis arrived at the scene, he knew he was responding to an alleged assault. He was met by a woman in obvious distress, who was holding a child. The officer's initial questions to her were objectively designed to determine what was presently happening and to assess the situation, not to memorialize a possible crime. When, as here, the purpose of the officer's questions, viewed objectively, is to ascertain if there is an ongoing emergency, the responses are not testimonial. *See Davis*, 542 U.S. at 822. Accordingly, M.G.'s statements to Officer Hovis that she had "escaped" from inside the house where she had been assaulted by her boyfriend, her exhibition of the injury to her lip, and her statement that her boyfriend was probably in the bedroom were not testimonial, and their admission into evidence did not violate Rodriguez's rights under the Confrontation Clause.

After Officer Hovis located Rodriguez in the bedroom and detained him, any emergency that may have existed earlier was over. The officer's subsequent questioning of M.G. was designed to discover what happened in the past and to memorialize events for later prosecution. Her responses were therefore testimonial. *See id.* Because M.G. did not testify at trial and Rodriguez did not have prior opportunity to cross-examine her, it was error of constitutional dimension to admit these statements, which consisted primarily of M.G.'s version of how the assault occurred. *See Crawford*, 541 U.S. at 59; *Vinson*, 252 S.W.3d at 341. We must now determine whether the error is reversible. *See* TEX. R. APP. P. 44.2(a).

### *Harm Analysis*

Federal constitutional error is harmless and not reversible if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967); *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). "Under *Chapman*, a federal constitutional error 'did not contribute to the verdict obtained' if the verdict 'would have been the same absent the error.'" *Clay*, 240 S.W.3d at 904 (quoting *Neder v. U. S.*, 527 U.S. 1, 15-18 (1999)). The *Chapman* test is codified in Texas Rule of Appellate Procedure 44.2(a). *Clay*, 240 S.W.3d at 904.

To assess the likelihood that, absent the trial court's error in admitting the evidence, the jury's verdict would have been the same, we must examine the entire record. *Id*. Among the factors to consider are: (1) the importance of the evidence to the State's case; (2) whether the evidence was cumulative of other evidence; (3) the presence or absence of other evidence corroborating or contradicting the evidence on material points; and (4) the overall strength of the State's case. *Id*. We must also consider any other factor in the record that may shed light on the probable impact of the trial court's error on the minds of average jurors. *Id*.

M.G. identified her attacker in her nontestimonal statements by stating her boyfriend had "assaulted" her and "he" was in the bedroom. She showed Officer Hovis an injury to her lip. Rodriguez admitted in his testimony that he had an argument with M.G., he grabbed M.G. by the arms, and he likely caused the bruises on M.G.'s arms. Although Rodriguez denied causing M.G.'s other injuries, Officer Hovis testified Rodriguez told him "things got out of hand," and the photographs admitted into evidence depicted not only bruising on M.G.'s arms, but also injuries to her lips and bruises on her eye, neck, shoulder, and chest. In light of this evidence, the testimonial

evidence was of slight importance to the State's case. Most of M.G.'s testimonial statements were cumulative of and corroborated by evidence properly before the jury. The only noncumulative evidence that should not have been admitted were M.G.'s statements that Rodriguez locked the bedroom door and kicked her, and that she retreated to a fetal position between the bed and the crib. However, in light of Rodriguez's admissions that he had an argument with M.G., things got "out of hand," and he used his hands against M.G., which likely resulted in bruising, we conclude beyond a reasonable doubt the verdict of the jury would have been the same had M.G.'s testimonial statements not been admitted.

Rodriguez argues he was harmed because the testimonial hearsay was the only evidence supporting the manner and means allegation in the information, which stated Rodriguez committed the assault by "striking the complainant with the hand of the defendant and striking the complainant with foot of the defendant." Rodriguez essentially contends that without proof as to the manner and means alleged in the information, the evidence would have been legally insufficient to support the verdict. We disagree for two reasons. First, the charge allowed the jury to convict on a finding that Rodriguez struck her with the hand *or* foot. Rodriguez's testimony that he used his hands to restrain M.G. and likely caused the bruises on her arms was sufficient to establish he assaulted M.G. by striking her with his hand.

Second, failure to prove the manner and means allegation would not have rendered the evidence insufficient. When evaluating the sufficiency of the evidence, an appellate court considers the evidence in light of a hypothetically correct jury charge as authorized by the charging instrument. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). For purposes of a sufficiency review, the hypothetically correct jury charge need only contain the essential elements of the offense and

"need not incorporate allegations that give rise to immaterial variances." *Gollihar v. State*, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001). In an assault case, the essential elements of the offense are: (1) a person; (2) intentionally knowingly, or recklessly; (3) causes bodily injury; (4) to another. TEX. PENAL CODE ANN. § 22.01 (Vernon Supp. 2008). A variance in the manner in which the assault occurred would not have been material and therefore would not be included in the hypothetically correct charge. *See Gollihar*, 46 S.W.3d at 257 (holding variance is not material unless it deprived appellant of adequate notice or subjected him to a risk of being prosecuted later for the same crime). A variance in the manner and means would not have rendered the evidence insufficient to support the verdict and therefore did not cause the harm Rodriguez alleges.

The trial court's judgment is affirmed.

Steven C. Hilbig, Justice

Publish