**Marcus Anthony WILSON, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–08–00236–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

July 30, 2009.

 Frances M. Northcutt, Houston, TX, for appellants.

April Adams Silva, Houston, TX, for appellees.

Panel consists of Justices YATES, GUZMAN, and SULLIVAN.

## OPINION

KENT C. SULLIVAN, Justice.

Appellant, Marcus Anthony Wilson, was arrested and charged with burglary of a habitation with the intent to commit aggravated sexual assault, a first-degree felony. *See* Tex. Penal Code Ann. § 30.02(a), (d) (Vernon 2003). He confessed that he entered the complainant's home without her consent, pushed her to the floor, and brandished a knife which he then used to cut her pants off. Before trial began, the court denied appellant's motion to suppress his confession, eventually finding that it was knowingly and voluntarily given. The jury then convicted appellant of the charged offense and sentenced him to fifteen years' imprisonment. *See* Tex. Penal Code Ann. § 12.32(a) (Vernon 2003).

Appellant raises two issues on appeal. First, he contends the trial court, having denied his motion to suppress his confession, was required to explain its ruling through findings of fact and conclusions of law. That first issue is now moot because, in response to our order, the trial court has made the requisite factual findings and legal conclusions. Second, appellant asks us to reverse his conviction on Sixth Amendment grounds because, during the punishment phase of trial, an investigating officer testified about statements uttered by an out-of-court witness as to a collateral crime. We hold that the admission of those statements did not result in harm to the appellant. Therefore, we affirm the conviction.

## I.

### TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ In the trial court, but not on appeal, appellant claimed that his written confession was involuntarily given, and he filed a motion to suppress. The trial court conducted a hearing on the voluntariness of the confession. After hearing testimony from several witnesses, the court denied the motion to suppress and permitted the confession to be introduced into evidence. Having concluded that appellant's statement was voluntarily made, the trial court was obligated to issue an order stating its conclusion and the specific facts that support its ruling. *See* Tex.Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon 2005). However, the trial court initially failed to do so.

In his first issue on appeal, appellant notified us of the trial court's failure to comply with article 38.22. Therefore, we abated the appeal and directed the trial court to prepare and file the requisite factual findings and conclusions. *See Wicker v. State,* 740 S.W.2d 779, 784 (Tex.Crim. App.1987). On February 17, 2009, the trial judge complied by filing written findings of fact and conclusions of law supporting his ruling that appellant's statement was knowingly and voluntarily given. The trial judge specifically found, among other things, that:

(1) the testimony given by three law-enforcement officers was credible, but the appellant and his former girlfriend were not believable witnesses;

(2) appellant was made aware of, but voluntarily waived, his constitutional and statutory rights under the United States Constitution, Texas Constitution, and Texas Code of Criminal Procedure;

(3) appellant's confession was not the product or result of any law-enforcement promises or coercion;

(4) appellant's written statement was obtained in compliance with article 38.22; and, therefore,

(5) appellant's confession was knowingly and voluntarily given.

Although we offered to consider supplemental briefing following the entry of the trial court's findings and conclusions,[1] appellant does not contest the trial court's findings or conclusion that his confession was voluntarily given. Thus, we are left with an issue that was rendered moot by

the filing of a supplemental clerk's record containing the trial court's findings of fact and conclusions of law. *See Allen v. State,* 795 S.W.2d 15, 16 (Tex.App.-Houston [14th Dist.] 1990, no pet.).

We overrule appellant's first issue as moot. Next, we address appellant's second issue, in which he claims he was deprived of his right to confront a witness during the punishment phase of trial.

We begin with a recitation of the background facts. Because the resolution of this appeal requires us to analyze the overall strength of the prosecution's case for punishment,[2] we are unfortunately compelled to relate the graphic details of the alleged assault against the complainant.

## II.

### FACTUAL BACKGROUND

At noon on September 20, 2005, the complainant, a 32–year–old mother of five children, walked to her kitchen to prepare a bottle for her newborn daughter. There, she discovered that a black male, whom she later identified as appellant, had forcibly broken into her house and was waiting for her in the kitchen with a knife. She testified that appellant struck her, threw her forcibly to the floor, and then grabbed her from behind.

The complainant further testified that, after making crude comments about her genitals, appellant dragged her to the bathroom and, using hand gestures,[3] instructed her to take her clothes off. She resisted and, during the ensuing struggle, appellant sliced her hand with the knife,

---

1. *See* Tex.R.App. P. 38.7.

2. *See Scott v. State,* 227 S.W.3d 670, 690 (Tex.Crim.App.2007); *Grant v. State,* 218 S.W.3d 225, 233 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd).

3. The record indicates that English is not the complainant's native language, and appellant later confessed that she did not appear to understand his attempts at spoken communication.

choked her, and threw her down against the bathroom tub. Appellant also cut her pants off and tore her blouse open, leading her to believe he planned to rape her. She further testified that he groped her breasts and vagina, unzipped his pants, and began masturbating.

According to the complainant, appellant then beat her and kicked her in the head and abdomen. Hoping to placate him, she called out to her three-year-old son to offer her purse and jewelry to appellant. She testified that appellant kicked her son, who was very frightened by the entire ordeal, but that appellant ultimately accepted the jewelry, kissed the complainant on the cheek, and then left the apartment.

Appellant was apprehended in January 2006, and the complainant identified him as her assailant. Appellant confessed in writing to the burglary, and the recitation of the facts contained in the confession is similar to the complainant's account of the assault.[4] However, notwithstanding the sexual nature of the assault, appellant insisted that his intent, when he entered the apartment, was merely to commit theft.

Appellant pleaded "not guilty" to the indicted offense of burglary of a habitation with the intent to commit aggravated sexual assault. He offered no testimony, witnesses, or evidence during his case-in-chief. Instead, while conceding that appellant entered the apartment, the defense contended that he intended only to commit theft, not aggravated sexual assault. Apparently rejecting that defense, the jury convicted him of the indicted offense. Appellant elected to have the jury assess punishment.

During the punishment phase, which began the following day, the State re-introduced, and the trial court admitted, all of the evidence offered during the guilt-innocence portion of trial. In addition, the jury heard from Officers Freddie Castillo and Felipe Gallegos, both of whom testified about appellant's alleged commission of another burglary six months later.

Specifically, Gallegos testified without objection that, on January 23, 2006, he received a police dispatch about a home that was being burglarized. When Gallegos arrived at the crime scene, Castillo, the first responder, was already speaking with the complainant, Esmeralda Baez. Castillo then broadcast the suspect's physical description and likely direction of travel to Gallegos and other law-enforcement personnel, who established a perimeter. Within seven or eight minutes, Gallegos, who received assistance from several onlookers, apprehended appellant, who matched the suspect's physical description. At the time of his arrest, appellant was wearing a backpack that contained several items commonly used in home burglaries, including white latex gloves, Velcro tie-downs, a knife, and a box-cutter. The backpack and its contents were admitted into evidence, without objection.

 Castillo also testified about the January burglary and, over appellant's confrontation-clause objection,[5] testified about some of Baez's statements to him. Specifically, before appellant was apprehended, Baez told Castillo that she had seen appellant attempting to enter her home while wearing white latex gloves. In addition, Castillo testified that, after Baez

---

4. Appellant neither acknowledged nor denied some of the complainant's specific factual allegations, and his version of the facts is not inconsistent with the complainant's testimony or the facts she initially reported to the police.

5. "[T]he Confrontation Clause does apply during the punishment phase [of criminal trials]." *Dixon v. State*, 244 S.W.3d 472, 482 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd).

saw that appellant had been taken into police custody, she blurted out, "That's him. That's him." The trial court overruled appellant's objections to the admission of Baez's statements.

Appellant did not testify during the punishment phase and did not ask the jury to consider community supervision. Instead, the jury was instructed to assess punishment at confinement for any term of at least five years but no more than ninety-nine years or life. *See* Tex. Penal Code Ann. § 12.32(a). The jury sentenced appellant to confinement for fifteen years.

In his second issue on appeal, appellant contends that Baez's statements to Castillo, concerning the subsequent burglary, were "testimonial" and therefore barred by the Sixth Amendment's Confrontation Clause, and that he was harmed by the admission of those statements. We hold that Baez's initial statements to Castillo were non-testimonial, and that the trial court did not err by admitting them into evidence. We further hold that, even if the trial court erred by admitting Baez's subsequent identification, appellant was not harmed by the evidence. Therefore, we will overrule his second issue.

## III.

### CONFRONTATION CLAUSE

The Sixth Amendment to the United States Constitution affords a criminal defendant with the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. This provision, known as the Confrontation Clause, prohibits the admission of "testimonial" statements by a witness who does not appear at trial, unless the witness was unavailable to testify and the defendant had a previous opportunity to cross-examine him. *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

Appellant did not have a prior opportunity to cross-examine Baez. Therefore, the admissibility of her statements, as offered through Officer Castillo's testimony, turns upon the threshold question of whether the statements were testimonial. *See Vinson v. State*, 252 S.W.3d 336, 338 (Tex.Crim. App.2008); *Campos v. State*, 256 S.W.3d 757, 761 (Tex.App.-Houston [14th Dist.] 2008, pet. ref'd). We review a constitutional legal ruling, including whether a statement is testimonial, *de novo. Campos*, 256 S.W.3d at 761.

### A. *"Testimonial" Statements*

In *Crawford*, the United States Supreme Court declined to define the term "testimonial" but indicated that, at a minimum, the term encompasses certain categories of statements, including those "taken by police officers in the course of interrogations." *Crawford*, 541 U.S. at 52, 68, 124 S.Ct. 1354. However, in *Davis v. Washington*, issued two years after *Crawford*, the Supreme Court held that some statements that result from police interrogation are nevertheless non-testimonial. *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). The Court drew the line as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822, 126 S.Ct. 2266. Thus, we must determine whether circumstances were present when Baez spoke with Castillo

that would objectively indicate the existence of an ongoing emergency. *See Vinson*, 252 S.W.3d at 339. In deciding this question, we review the totality of the circumstances and may consider several non-exclusive factors, including:

(1) whether the event was still ongoing;

(2) whether the questions sought to determine what was presently happening, as opposed to what had happened in the past;

(3) whether the primary purpose of the questioning was to render aid, and not simply memorialize a possible crime;

(4) whether the questioning was conducted in an environment that was tranquil and safe; and

(5) whether the events were deliberately retold in a step-by-step fashion.

*Id.* (citing *Davis*, 547 U.S. at 827, 126 S.Ct. 2266); *Clark v. State*, 282 S.W.3d 924, 931 (Tex.App.-Beaumont 2009, no pet. h.).

### B. Application to Baez's Statements

In applying these factors, we begin with a more detailed discussion of Castillo's testimony about both statements. Castillo testified that he arrived at the scene of the burglary-in-progress fewer than five minutes after receiving the dispatch. There, he was met by a sobbing Baez, whom he described as "very frightened" and hysterical, and who was still "under the stress" of the crime that had just occurred. In her initial remarks, she informed Castillo that she had been sleeping in her bedroom. She awakened and saw appellant, who was wearing white surgical gloves, partially entering her house through the bedroom window. She asked what he wanted and

was told, "a cigarette." She then fled from her house and reported the ongoing crime. This exchange is the first of two statements that, according to the appellant, should be considered "testimonial."

Baez also provided Castillo with a physical description of appellant, and indicated that he was last seen running northbound. Castillo passed that information to surrounding law-enforcement units, who established a four-block dragnet in an attempt to catch the suspect. Because the burglar's whereabouts were unknown, Castillo then remained with Baez until appellant was apprehended. Appellant, who matched the suspect's physical description, was detained in only seven or eight minutes. He was brought back to the scene of the crime where Baez, who was still weeping, spontaneously exclaimed, "That's him. That's him." This identification of appellant is the second of the objected-to statements.

### 1. Initial Statements

■ Arguing that Baez's first statements were testimonial, appellant emphasizes the facts that (1) the police had arrived and (2) the burglary suspect had fled the premises. Appellant concludes from those facts that "the emergency, although recent, was over." We disagree with that conclusion.

Castillo arrived at the crime scene almost immediately after learning that a burglary was in progress. In hindsight, it appears that the burglary may have ended shortly before he arrived.[6] However, the suspect had just fled and was still at large, and his whereabouts were unknown. Thus, although some of Baez's statements

---

6. The record does not specifically reflect how much overall time passed between Baez's report of the crime and the police officers' arrival at the scene. We note that appellant was apprehended only four blocks away from the crime scene, suggesting a minimal amount of time had passed after he fled Baez's house. In addition, appellant concedes in his brief that, when Baez first spoke to Castillo, the emergency was "recent."

dealt with events that had recently occurred, Castillo was also interested in what was *presently* happening, including the suspect's physical description and location. Thus, the record reflects that the primary purpose of his questioning was not to document a past crime, but instead to assess the situation, secure the crime scene, decide on the size of the dragnet necessary to apprehend the suspect, locate him,[7] and arrest him in order to end the ongoing emergency situation. *See Davis,* 547 U.S. at 829, 126 S.Ct. 2266 (suggesting that "questions necessary to secure [officers'] safety *or the safety of the public*" would be non-testimonial) (emphasis added); *Vinson,* 252 S.W.3d at 339–40; *Dixon v. State,* 244 S.W.3d 472, 485 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd); *Clark,* 282 S.W.3d at 931–32; *Rodriguez v. State,* 274 S.W.3d 760, 765 (Tex.App.-San Antonio 2008, no pet.).[8] Stated differently, the information solicited from Baez were necessary to enable police to arrest the suspect and "resolve the present emergency." *See Davis,* 547 U.S. at 827, 126 S.Ct. 2266.

The fact that the suspect was still loose carries particular significance here. In *Vinson,* the Court of Criminal Appeals held that, even though the alleged domestic assault had ended by the time the police arrived at the crime scene, the "emergency situation" continued until the assailant had been arrested and secured in a patrol car:

> We agree with the court of appeals that up to this point, *before the appellant had been secured in the patrol car,* the trial court could rationally have concluded that any interrogation was nontestimonial. The trial court could reasonably have found that [the police officer] was still assessing the situation and that, *until the appellant was secured,* an emergency situation was ongoing.

*Vinson,* 252 S.W.3d at 339–40 (emphases added); *see also Rodriguez,* 274 S.W.3d at 765 (concluding that emergency existed until suspect was detained by police); *cf. Clark,* 282 S.W.3d at 931 (holding that statements were non-testimonial even though suspect was in custody, because officer did not yet know if he had arrested the correct suspect).

We note that Baez was questioned separately from the suspect and in an environment that was relatively safe inasmuch as police officers were present.[9] However, we cannot say that the environment was "tranquil" or that Baez provided a deliberate, step-by-step statement such as that involved in *Crawford.*[10] *See Davis,* 547

---

7. *See, e.g., Pritchard v. State,* No. 2–08–137–CR, 2009 WL 112717, at *2 (Tex.App.-Fort Worth Jan. 15, 2009, pet. filed) (mem. op., not designated for publication) (deciding that an "ongoing emergency" existed because the whereabouts of the suspect and one of the victims was unknown).

8. We have previously held that "[s]tatements made to officers responding to a call during the initial assessment and securing of a crime scene are not testimonial." *Hudson v. State,* 179 S.W.3d 731, 737 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *Dixon,* 244 S.W.3d at 482. The *Davis* Court rejected a *per se* rule for a police officer's initial inquiries but indicated that, because officers "need to know whom they are dealing with in order to assess

the situation," such initial inquiries will *often* produce non-testimonial statements. *See Davis,* 547 U.S. at 832, 126 S.Ct. 2266 (citation omitted).

9. Notably, even after broadcasting the physical description of the suspect, Castillo remained at Baez's side until after appellant was arrested.

10. Castillo, summarizing Baez's statements in his testimony to the jury, provided a step-by-step retelling of her comments. However, the record does not reflect that *her* statements, which were uttered while she was said to be "hysterical," were deliberately and thoughtfully conveyed to him in such an organized fashion.

U.S. at 827, 126 S.Ct. 2266 (differentiating between the level of formality involved in *Crawford,* in which statements were calmly uttered in the station house, with that in *Davis,* involving "frantic answers" in a non-tranquil environment). Instead, the record shows that Baez's statements were made at the scene while the situation was still in progress, and while the speaker was hysterical and under stress. *See Dixon,* 244 S.W.3d at 484; *Clark,* 282 S.W.3d at 932; *Rodriguez,* 274 S.W.3d at 765. Thus, Baez's statements were neither "official and formal in nature" nor "solemn declaration[s] made for the purpose of establishing some fact." *See Dixon,* 244 S.W.3d at 485 (citing *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354). Simply put, she was not acting *as a witness* and did not offer "'a weaker substitute for live testimony' at trial." *See Davis,* 547 U.S. at 828, 126 S.Ct. 2266 (citation omitted).

Therefore, we hold that Baez's initial statements, in which she described the burglary and provided a description of the suspect, were not testimonial. Accordingly, the Confrontation Clause did not bar their admission into evidence.

### 2. Subsequent Identification

However, we need not reach the same conclusion as to Baez's later statements identifying appellant as the burglar. *See Dixon,* 244 S.W.3d at 486 (recognizing that non-testimonial interrogation may later evolve into investigation producing testimonial statements). In some circumstances, statements identifying a suspect may be non-testimonial if they assist police officers in knowing whether they might encounter a violent felon. *See Davis,* 547 U.S. at 827, 126 S.Ct. 2266. However, because appellant was already in custody at the time of Baez's identification, we cannot conclude that her identification was necessary to ensure the officers' safety. *See id.* In addition, the emergency situation may have ended once appellant was securely in police custody. *See Vinson,* 252 S.W.3d at 341–42; *Rodriguez,* 274 S.W.3d at 765; *but see Clark,* 282 S.W.3d at 931–32 (holding that emergency situation persisted even after suspect was placed in custody, such that witness's identification of suspect was non-testimonial).

In its brief, the State emphasizes the fact that Baez's identification was spontaneous and did not result from police interrogation. *See Dixon,* 244 S.W.3d at 482 ("[S]pontaneous statements to the police are not testimonial[.]"); *Spencer v. State,* 162 S.W.3d 877, 882 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd). However, the continued viability of that rule may be at issue, following *Davis:*

> Our holding refers to interrogations because . . . the statements in the cases presently before us are the products of interrogations—which in some circumstances tend to generate testimonial responses. *This is not to imply, however, that statements made in the absence of any interrogation are necessarily non-testimonial.* The Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation. . . . And of course even when interrogation exists, it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate.

*Davis,* 547 U.S. at 822 n. 1, 126 S.Ct. 2266 (emphasis added). However, we need not decide whether Baez's spontaneous identification was testimonial because, even if the statement was erroneously admitted, we conclude beyond a reasonable doubt that its admission did not harm the appellant.

## IV.

### HARM ANALYSIS

■■ Assuming without deciding that Baez's identification was erroneously admitted, a finding of error here would not necessitate that we reverse appellant's conviction. Instead, a violation of a defendant's right to confrontation is subject to harmless-error analysis. *Rubio v. State,* 241 S.W.3d 1, 3 (Tex.Crim.App.2007). Thus, even if the admission of Baez's identification was erroneous, we nevertheless will affirm the conviction if we determine beyond a reasonable doubt that the alleged error did not contribute to appellant's punishment. *See Grant,* 218 S.W.3d at 233; Tex.R.App. P. 44.2(a). In determining whether the admission of Baez's testimonial statement was harmless beyond a reasonable doubt, we consider:

(1) the importance of the testimonial statement to the State's case;

(2) whether the testimonial statement was cumulative of other evidence;

(3) the presence or absence of evidence corroborating or contradicting the testimonial statement on material points; and

(4) the overall strength of the State's case.

*See Grant,* 218 S.W.3d at 233.

In addition to those factors, we may also consider the source and nature of the error, the extent of the State's emphasis on the evidence, and the relative weight the jury may have assigned to the evidence as compared with the balance of the remaining evidence relevant to the issue of punishment. *See Scott v. State,* 227 S.W.3d 670, 690 (Tex.Crim.App.2007). Finally, we may also consider any other factor contained in the record that might shed light on the probable impact of the evidence on the minds of average jurors. *Clay v.* *State,* 240 S.W.3d 895, 904 (Tex.Crim.App. 2007).

■ We are not to simply decide whether the jury verdict enjoyed evidentiary support. *See Scott,* 227 S.W.3d at 690. Instead, the question is whether the alleged constitutional error was actually a contributing factor in the jury's deliberations in arriving at a verdict. *Id.* Thus, a *Crawford* error does not require reversal unless there is a reasonable possibility that, within the context of the entire trial, the perceived error "moved the jury from a state of non-persuasion to one of persuasion on a particular issue." *Id.; Grant,* 218 S.W.3d at 233.

■ After reviewing these considerations, we are persuaded beyond a reasonable doubt that the punishment assessed by the jury would have been the same even if the trial court had not admitted Castillo's testimony about Baez's identification of appellant in the collateral crime. *See Clay,* 240 S.W.3d at 905. Her identification was corroborated by, and merely cumulative of, other evidence linking appellant to the burglary of Baez's home. First, Gallegos identified appellant as the person taken into custody, and further confirmed that appellant matched the physical description of the burglary suspect. Second, appellant was carrying a backpack containing tools commonly used to burglarize homes and restrain the occupants, including white latex gloves like those worn by the suspect who broke into Baez's house. Thus, the mere fact that Baez *confirmed* appellant's identity to Castillo—a statement that was not emphasized by the State during closing argument—was not important to the State's case on punishment.

Instead, the State heavily emphasized the complainant's testimony, which the jury heard only one day before deciding appellant's punishment, about the horrific

and humiliating nature of the violent assault committed against her in the presence of her 3–year–old son:

> [Appellant] went into [the complainant's] house and broke in. Tore open the backdoor. He broke into her house and he grabbed a knife and he put a knife to her throat. After he put a knife to her throat he tore her ... pants off. After he tore her pants, he stuck his hand [in] and started playing with her vagina.
>
> He then pulled her shirt [off] and started sucking on her breasts. [She] gives him jewelry, a crucifix, a necklace with the Virgin Mary all in front of her three year old who watched this. Who watched mom getting sexually assaulted in their own bathroom in the middle of the day.

The complainant's graphic testimony was further corroborated in large part by appellant's written confession, in which appellant admitted that his actions "terrified" the complainant.

In response to the State's argument on punishment, the defense suggested that, in burglarizing the complainant's home, appellant simply "lost [his] clarity" and committed a crime of opportunity. However, that contention was negated by the uncontested, unobjected-to evidence from Officer Gallegos that, on yet another occasion, appellant burglarized the home of a different woman, Baez, while carrying deadly weapons and tools, such as duct tape and tie-downs, that could be used to restrain her.[11]

Thus, the overall strength of the State's case for punishment was very strong, and Baez's identification of appellant "established little, if anything, negative about appellant that was not also well established by the properly admitted evidence." *See Clay*, 240 S.W.3d at 905–06. Accordingly, the record indicates that the jury probably assigned very little weight, if any, to Baez's identification of appellant when compared with the overwhelming evidence relative to punishment. *See Scott*, 227 S.W.3d at 690.

Finally, we consider one more factor that might shed light on the probable impact of Baez's statement of identification on the minds of the jury. *See Clay*, 240 S.W.3d at 904. Here, despite hearing evidence of (1) one graphic assault against one woman in front of her child, (2) another burglary allegedly committed against Baez, and (3) appellant's stipulation to a previous conviction for theft, the jury—which had to assess appellant's punishment at confinement for at least five years and as many as ninety-nine years[12]—sentenced him to only fifteen years' imprisonment. *See Higginbotham v. State*, 807 S.W.2d 732, 737 (Tex.Crim.App.1991) (considering severity of punishment in harm analysis); *Washington v. State*, 668 S.W.2d 715, 719 (Tex.App.-Houston [14th Dist.] 1983, pet. ref'd); *Ivey v. State*, 250 S.W.3d 121, 126 (Tex.App.-Austin 2008), *aff'd*, 277 S.W.3d 43 (Tex.Crim.App.2009); *Johnson v. State*, 83 S.W.3d 229, 233 (Tex.App.-

---

**11.** In his brief, appellant does not *separately* analyze or parse the alleged harm that may have resulted solely from Baez's identification of him. Instead, he claims globally that "Castillo's testimony about Baez' [*sic*] statements was the only evidence presented to the jury showing the commission of this extraneous offense." However, that statement is not supported by the record. With the exception of her statement that appellant was actually *wearing* the white latex gloves during the burglary, all of Baez's material statements were cumulative of Gallegos's testimony, to which appellant lodged no objection. That is, Gallegos testified that (1) he responded to a police dispatch of a burglary-in-progress, (2) appellant matched the physical description of the burglary suspect, and (3) appellant was carrying tools commonly used in home burglaries, including white latex gloves.

**12.** *See* Tex. Penal Code Ann. § 12.32(a).

Waco 2002, pet. ref'd); *Menefee v. State,* 928 S.W.2d 274, 281–82 (Tex.App.-Tyler 1996, no pet.). Thus, we cannot conclude that the admission of Baez's identification, even if erroneous, increased the severity of punishment assessed by the jury.

After considering all of the harmless-error factors, we find no reasonable probability that the trial court's alleged *Crawford* error "moved the jury from a state of non-persuasion to one of persuasion" on the issue of appellant's punishment. *See Grant,* 218 S.W.3d at 233. Therefore, we hold that the admitted evidence was harmless.

Accordingly, we overrule appellant's second issue.

### CONCLUSION

Finding no merit in the issues presented, we affirm the judgment of the trial court.