ACCEPTED
07-15-0075-cr
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
8/12/2015 1:35:02 PM
Vivian Long, Clerk

No. 07-15-00075-CR

In The

# Court of Appeals
# Seventh District of Texas

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
8/12/2015 1:35:02 PM
VIVIAN LONG
CLERK

Amarillo, Texas

---

**ANTHONY FLORES,**
  *Appellant,*


***---versus---***


**THE STATE OF TEXAS,**
  *Appellee.*

---

*On Appeal from Cause No. 2012-434,171*
*In the 364th Judicial District Court of Lubbock County, Texas*
*The Honorable Brad Underwood Presiding*

---

## APPELLANT'S REPLY BRIEF

---

Allison Clayton
State Bar No. 24059587
The Law Office of Allison Clayton
P.O. Box 64752
Lubbock, Texas 79464
(806) 773 – 6889
Fax (888) 688 – 4515
Allison@AllisonClaytonLaw.com

*Attorney for Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................i

INDEX OF AUTHORITIES.....................................................................................ii

INTRODUCTION ...................................................................................................5

ARGUMENT ...........................................................................................................7

**THE ADMISSION OF TESTIMONIAL STATEMENTS AT TRIAL VIOLATED MR. FLORES'S RIGHT TO CONFRONT WITNESSES AGAINST HIM AND CONTRIBUTED TO HIS CONVICTION**

    A.      The Clerk's Statements Were Testimonial...............................................3

    B.      The Testimonial Statements Contributed to
             Mr. Flores's Conviction .......................................................................8

PRAYER ................................................................................................................10

CERTIFICATES ...................................................................................................11

# INDEX OF AUTHORITIES

## CASES
### *Federal Cases*

*Crawford v. Washington*,
    541 U.S. 36, 124 S.Ct. 1354 , 158 L.Ed.2d 177 (2004) ....................................3, 4

*Davis v. Washington*,
    547 U.S. 813, 126 S.Ct. 2266 , 165 L.Ed.2d 224 (2006) .................................3, 4

*Michigan v. Bryant*,
    562 U.S. 344, 131 S.Ct. 1143 , 179 L.Ed.2d 93 (2011) .........................................7

### *State Cases*

*Cassidy v. State,*
    149 S.W.3d 712..............................................................................................6

*State v. Echendu,*
    2012 WL 1130419  (Tex. App.—Dallas Apr. 5, 2012, no pet.) ...........................6

*Hernandez v. State*,
    332 S.W.3d 664 (Tex. App.—Texarkana 2010, no pet.) .....................................8

*Langham v. State*,
    305 S.W.3d 568 (Tex. Crim. App. 2010)................................................................9

*Vinson v. State*,
    252 S.W.3d 336 (Tex. Crim. App. 2008) .............................................................4

*Wilson v. State*,
    296 S.W.3d 140 ..............................................................................................7

# INDEX OF AUTHORITIES (CONT'D)

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. VI ................................................................................3

Tex. Const. art. I................................................................................3

## STATE RULES

TEX. R. APP. P. 44.2(a)................................................................................ 9

No. 07-15-00075-CR

In The

# Court of Appeals
# Seventh District of Texas

Amarillo, Texas

---

**ANTHONY FLORES,**
                              *Appellant,*


*---versus---*

**THE STATE OF TEXAS,**
                              *Appellee.*

---

*On Appeal from Cause No. 2012-434,171*
*In the 364th Judicial District Court of Lubbock County, Texas*
*The Honorable Brad Underwood Presiding*

---

## APPELLANT'S REPLY BRIEF

---

TO THE HONORABLE COURT OF APPEALS:

ANTHONY FLORES, Appellant in docket number 07-15-00075-CR, having filed his Opening Brief now submits this brief in reply to the brief submitted by the State. Appellant requests the Court reverse the Judgment entered in cause number 2012-434,171 out of the 364th Judicial District Court of Lubbock County, Texas, and remand the case for further proceedings in the court below.

# INTRODUCTION

A jury found appellant Anthony Flores guilty of robbing Lamar Johnson at gunpoint. (6 RR 28; CR 90). Lamar testified he was about to start pumping gas when Anthony ran up behind him brandishing what Lamar thought was a shotgun. (5 RR 82-83, 85). Anthony took money from Lamar. (*Id.* 84). At trial, Lamar testified Anthony had also tried to rob another person. (*Id.* 94, 158). Trial, however, was the first time this attempted robbery was mentioned. Either way, Anthony completes the robbery of Lamar, runs back to his car, puts the purported shotgun back into the trunk of the car, and drives away. (*Id.* 94, 133, 158).

Lamar does not immediately report the crime, as he would much rather deal with the robber himself. (*Id.* 93, 98). He could not get the gas pump to work, though. (*Id.* 85-86). He struggled with the pump for a while before abandoning his aspirations of vengeance. (*Id.* 86). Several minutes after the robbery, the store clerk finally called 911 to report a customer was robbed at gunpoint. (*Id.* 98).

About one week later the police arrested Anthony. (5 RR 36). Anthony confessed to the robbery. (*Id.* 138-39). He insisted, however, he had not used a shotgun on Mr. Johnson. 5 RR 138-39). Rather, Anthony told police he flashed a stick wrapped with tape and made up to resemble a gun. (*Id.* 139). Despite this defense, the jury found Anthony guilty of aggravated robbery with a deadly weapon. (CR 90).

## ARGUMENT

## THE ADMISSION OF TESTIMONIAL STATEMENTS AT TRIAL VIOLATED MR. FLORES'S RIGHT TO CONFRONT WITNESSES AGAINST HIM AND CONTRIBUTED TO HIS CONVICTION

### A. The Clerk's Statements Were Testimonial

Testimonial statements repeated at trial by someone other than the declarant violate a defendant's right to confront adverse witnesses. U.S. CONST. AMEND. VI.; TEX. CONST. art. I, § 10; *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). A statement is testimonial if its "primary purpose" is "to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 2274, 165 L.Ed.2d 224 (2006).

In this case, after the robbery, Anthony ran to his car, put the purported shotgun in his trunk, and drove away. (*Id.* 94, 133, 158). Several minutes later, Lamar finally reported the robbery to the clerk, who then called 911. (*Id.* 26, 39). On the 911 call, the clerk gave the store's address and reported that fifteen minutes prior to the call a customer was robbed at gunpoint in the parking lot.[1] (State's Exhibit 1, Recording 1, at 0:11 and 0:14). At trial, the court admitted the phone call into evidence. (4 RR 22-23). The clerk never testified.

---

[1] In its brief, the State avers the time stamps on the surveillance footage indicate the phone call was actually made six minutes after the robbery "***not*** fifteen minutes as suggested by Appellant." (Brief for the State, pg. 2 n. 13). First, Appellant's Opening Brief, maintaining absolute accuracy to the record, simply reiterated the clerk's statements, which was that the robbery occurred fifteen minutes prior to the phone call. (Appellant's Opening Brief on the Merits, pg. 10). Second, the very fact there is a dispute between what the clerk's statements were and what other evidence indicated only serves to further demonstrate the need for actual cross-examination of the clerk.

In its brief, the State primarily contends the clerk's statements were not testimonial because they were made in the context of an ongoing emergency. The touchstone of an "ongoing emergency" analysis is whether the declarant was speaking about events "*as they were actually happening*, rather than describing past events." *Davis*, 547 U.S. at 827, 126 S.Ct. at 2276 (internal quotation omitted) (emphasis in original). Other factors relevant to the analysis are:

> 1) whether the situation was still in progress; 2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; 3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; 4) whether the questioning was conducted in a separate room, away from the alleged attacker; and 5) whether the events were deliberately recounted in a step-by-step fashion.

*Vinson v. State*, 252 S.W.3d 336, 339 (Tex. Crim. App. 2008).

The clerk's statements were made long after the robbery occurred. The crime was no longer in progress. *See id.* The robbery had happened "in the past." *See id.* When the clerk called, he was not seeking aid from the police to neutralize a robbery or any other ongoing threat. *See id.* There is a very big difference between "A customer is being robbed at gunpoint in the parking lot" and "Fifteen minutes ago, a customer was robbed at gunpoint in the parking lot." When the Court listens to the 911 call, it will hear for itself – there was no ongoing emergency. The call was to memorialize a completed crime and summon police to the scene to investigate a completed crime.

The State avers the "ongoing" nature of the emergency was that the robber was still at large. A fair reading of both Appellant's and State's brief reveals the crux of their debate: what constitutes the "emergency" in this case. Appellant contends (on the unique facts of this case) the emergency is limited to the *actus reus* of the robbery itself. Once the robbery was completed, the emergency was concluded. The State contends the emergency was a potentially armed robber driving around for an undetermined amount of time after the robbery.

The State's reasoning is flawed; the rule created by it is unworkable. The State first relies on the evidence Appellant tried to rob another patron before fleeing. ("Brief for the State," pg. 12). Evidence of a second robbery never arose until Lamar's testimony at trial. (5 RR 94, 158). The State, on appeal, is trying to support its "ongoing emergency" analysis with evidence that was unheard of until over one year after the incident. This alleged second attempted robbery is irrelevant to the objective determination of whether the participants *that night* thought there was an ongoing emergency or a concluded robbery.

The State likewise tries to make much of the evidence the robber brandished a gun during the robbery. It fails to consider, however, the fact that the robber locked the gun the trunk of his car before he drove away. (5 RR 133). Any threat to the public and police was minimal. *See Michigan v. Bryant*, 562 U.S. 344, 364, 131 S.Ct. 1143, 1158-59, 179 L.Ed.2d 93 (2011).

The State likewise omits from its discussion any recognition that the robber did not shoot or injure Lamar, factors which are traditionally included in determining whether there is an ongoing emergency. *See id.*, 562 U.S. at 364-65, 131 S.Ct. at 1159 (stating "[t]he medical condition of the victim is important to the primary purpose inquiry . . ."). For example, in *Michigan v. Bryant*, relied heavily upon by the State, the police came upon a mortally wounded man who indicated his attacker had shot him "a few minutes" beforehand. In *State v. Echendu*, also cited by the State, the victim called 911 stating "she was 'bleeding everywhere'" and asking the police to "hurry" to her aid. No. 05-11-00346-CR, 2012 WL 1130419 at *1 (Tex. App.—Dallas Apr. 5, 2012, no pet.). Again, in the *Cassidy v. State* case cited by the State, the victim had been stabbed and there was "a considerable amount of blood" at the scene. 149 S.W.3d 712, 713-14 (Tex. App.—Austin 2004, pet. ref'd).

Finally, the State says Appellant's contention that the passage of several minutes before the clerk made the phone call is highly relevant is "unfounded." (Brief for the State, pg. 11). This passage of time is, in fact, very relevant. It instructs the Court not only as to whether the statement concerned an ongoing emergency or a completed crime but it also reveals the intent and demeanor of the declarant.

By the time the clerk made the 911 call, the robbery was over and the robber was long gone. There was no ongoing threat. The clerk was reporting a crime *had occurred*. Moreover, the demeanor of the clerk and even the victim shows neither were under the stress of the crime at the time of the statement. This is an important factor given the State's reliance on *Wilson v. State*, 296 S.W.3d 140 (Tex. App.—Houston [1st Dist.], pet. ref'd). In *Wilson*, the declarant who made the statements was "sobbing," "'very frightened' and hysterical," and "'under the stress' of the crime." *Id.* at 146. When she saw the defendant, "seven or eight minutes" later, she was "still weeping" when she made more statements. *Id.*

This is in stark contrast to the demeanor of the declarant in the case at bar. There was no weeping, sobbing, or hysteria involved. The clerk calmly reported one of his customers had been robbed. There is not even any evidence that the clerk actually saw the robbery when he made the report.

At the end of the analysis, Appellant recognizes the Court's analysis must be very case-specific. With a few variations in the evidence or in the constitution of the people involved, the statements would not be testimonial. However, on *this* record with *this* declarant, the statement was clearly reporting a concluded crime by a person capable of calm reflection for the purpose of initiating a police investigation. As such, it was testimonial.

### B. The Testimonial Statements Contributed to Mr. Flores's Conviction

Anthony confessed to robbing Lamar, but he steadfastly insisted the "gun" he displayed was in fact a stick made up to simulate a gun. (5 RR 139). The State was unable to directly or indirectly link Mr. Flores to any weapon. The closest the State got was a single spent shotgun shell in the floorboard of Anthony's car, which Anthony was not even in at the time of the stop one week after the robbery. (5 RR 32; 7 RR 71). A single shotgun shell of unknown size and unknown origin does very little to support the deadly weapon element. (Brief for the State, pg. 22).

Apart from one shotgun shell, the only other evidence on the deadly weapon issue was the conflicting statements of Anthony and Lamar, along with the clerk's statement. As detailed in Appellant's Opening Brief on the Merits, Lamar's character and motivation for testifying was questionable, and his testimony on basic facts was impeached several times over. The State questions whether Lamar would have handed over his money had he known the gun was not real. Lamar's ability to, in the middle of the night, discern the gun's authenticity has no bearing on whether it was, in reality, a deadly weapon. *See Hernandez v. State*, 332 S.W.3d 664 (Tex. App.—Texarkana 2010, no pet.) (holding a toy gun was insufficient to qualify as a deadly weapon even though the robbery victim perceived it was real).

Besides, if Lamar's testimony was so reliable, then why did the State insist on admitting the clerk's 911 call. After getting the phone call into evidence, it then used the clerk's statements to bolster Lamar's recollection – all done through the testimony of a police officer. (4 RR 35; 5 RR 126). The prosecutor again reminded the jury that not just Lamar had seen the shotgun. In closing arguments he said "Even the clerk says this guy just got held up by a shotgun. Shotgun, shotgun. *Two people* have now said that." (6 RR 13) (emphasis added). Then, again, at the end of rebuttal closing argument, the prosecutor assured the jury it could trust Lamar's questionable testimony because, "Then [the clerk], not Lamar, [the clerk] is the one that calls 911. He also knew there was a shotgun." (*Id.* 26).

Clearly the prosecutor at trial thought Lamar's testimony needed the support of the clerk's statements. The State's arguments on appeal to the contrary are belied by its obvious strategy at trial.

At the core of this case is the State, afforded the benefit of unchallenged eyewitness testimony versus Anthony, who was not even able to ask the clerk if he actually saw the robbery happen. This is the very situation the Confrontation Clause was designed to prevent. And to make matters worse, there is a "reasonable possibility" that admission of the 911 calls moved the jury from a state of non-persuasion to one of persuasion on the deadly weapon issue. *See Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010); TEX. R. APP. P. 44.2(a).

# PRAYER

Appellant Anthony Flores prays this Court would find the trial court committed reversible error by allowing testimonial statements to establish the deadly weapon element of the aggravated robbery charge. Mr. Flores asks the Court to reverse the Judgment and remand the case for proceedings consistent with the Court's opinion.

Respectfully submitted,

Law Office of Allison Clayton
P.O. Box 64752
Lubbock, Texas 79464-4752
Phone No.: (806) 773-6889
Fax No.: (888) 688-4515

By: _Allison Clayton_

Allison Clayton
State Bar No. 24059587
Allison@AllisonClaytonLaw.com

**CERTIFICATE OF SERVICE**

I certify that on August 12, 2015, a copy of this brief was served on opposing counsel, Jeffrey S. Ford of the Lubbock County District Attorney's Office, via electronic mail.

_Allison Clayton_
Allison Clayton

**CERTIFICATE OF COMPLIANCE**

I certify the foregoing Brief on the Merits complies with Rule 9.4(i)(2)(A) of the Texas Rules of Appellate Procedure. The brief, excluding those portions detailed in Rule 9.4(i) of the Texas Rules of Appellate Procedure, is 2,100 words long. I have relied upon the word count function of Microsoft Word, which is the computer program used to prepare this document, in making this representation.

_Allison Clayton_
Allison Clayton