

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-15-00295-CR

Gary Lee **AVANT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR5555
Honorable Jefferson Moore, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Karen Angelini, Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  July 13, 2016

AFFIRMED

Appellant Gary Lee Avant was found guilty of one count of assault causing bodily injury to an elderly individual, specifically his mother, Mrs. Vada Avant. The jury assessed punishment at eight-years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Gary contends the trial court erred in allowing Mrs. Avant's daughter to testify regarding statements made by Mrs. Avant. Gary argues that because the statements were testimonial in nature, they violated his Sixth Amendment right to confront Mrs. Avant. We affirm the trial court's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

The cause was called for trial on April 27, 2015, and Gary entered a plea of not guilty to the State's indictment alleging bodily injury to an elderly person pursuant to Texas Penal Code section 22.04. *See* TEX. PENAL CODE ANN. § 22.04(a)(3) (West 2011) ("A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to [an] elderly individual, . . . bodily injury.").

Prior to the State calling its first witness, and outside the presence of the jury, the trial court held a hearing on the admissibility of statements made by Mrs. Avant to her daughter, Carol Rudes.

*1.     Hearing Outside the Jury's Presence*

Rudes testified to the statements made by Mrs. Avant on March 31, 2014. Mrs. Avant telephoned Rudes; she was crying and very upset. Mrs. Avant requested Rudes "call the police. . . . I can't take it anymore." When she arrived at Rudes's residence, Mrs. Avant was shaking and crying. Mrs. Avant told Rudes what had transpired at Mrs. Avant's residence, including what Gary said and that Gary had pushed her.

Upon further questioning by the State, Rudes relayed that Mrs. Avant's physical and mental health have declined significantly since the incident. "Her memory has gotten very bad," and she "has a hard time walking."

After arguments of counsel, the trial court found Mrs. Avant was unavailable to testify based on her mental and physical disabilities. Specifically, the trial court noted her age, her limited mobility, and the court's concern for Mrs. Avant's well-being. "I don't see the utility or the purpose of bringing a lady like that over here just to have her ask questions of me or others as to what day it is. I don't see how that's going to assist the trier of fact."

The trial court further explained, "I'm not sure that Ms. Rudes was actually questioning her mom, as much as her mom was just relaying to Ms. Rudes what was happening." Moreover, because Gary was free to walk the short distance to Rudes's house, it "was still a dangerous situation." Considering the events themselves, and Mrs. Avant's stress and excitement caused by the events, the trial court concluded Mrs. Avant's statements during her telephone call to Rudes, as well as her statements made at Rudes's residence, were nontestimonial and admissible as an exception to the rule against hearsay. *See* TEX. R. EVID. 803(2) ("The following [is] not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . . Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."). Specifically, the trial court held Rudes's testimony, "as far as her—listening to her mother, talk to her over the phone and as far as [Gary] and his actions during that day," was admissible.

The jury returned to the courtroom and the State called its first witness.

*2.    Carol Rudes*

Carol Rudes, Mrs. Avant's daughter, testified her mother was ninety years old on the day of the incident; they lived on the same property, approximately 200 yards apart from each other. Gary, Rudes's brother, had moved in with her mother almost a month earlier. On the morning of March 31, 2014, Mrs. Avant was crying when she called Rudes:

> She said that she smelled smoke, she went in the kitchen, she got up. She was asleep. And the kitchen was full of smoke and this had happened before. And she said, Well, you did it again. Well, that was all that was needed to set him off.
>
> . . . .
>
> He said, This is my GD house. And you—I can do whatever I GD please.

Mrs. Avant further reported, "[Gary] pushed her against the wall and told her to get out of there and she said he had this wild look in his eyes. She was scared."

While Mrs. Avant walked to Rudes's house, Rudes called 911. When she arrived, Mrs. Avant again relayed her exchange with Gary. Rudes described her mother as "very upset" and experiencing pain in her shoulder, an area which later appeared as black and blue in color. Lastly, Rudes testified her mother has "gone downhill a lot. She's—her walking has gotten worse and mainly her memory has gotten worse."

### 2. *Bexar County Sheriff's Deputy Victor Barrera*

Bexar County Sheriff's Deputy Victor Barrera arrived at Mrs. Avant's residence and informed Gary he was dispatched for a family disturbance. Gary told Deputy Barrera that "he yelled at his mother because he felt like the property, meaning the house[,] belonged to him." Based on Gary's statement—that "he had killed President Obama"—and evidence of a struggle or fight in the house, Gary was detained in Deputy Barrera's patrol vehicle while the officer made contract with Mrs. Avant at Rudes's residence.

Deputy Barrera described both Rudes and Mrs. Avant as "scared." Mrs. Avant "was crying. She was sobbing. When I spoke to her, her voice was cracking." Mrs. Avant also complained of pain to her left shoulder and left leg. Considering Gary's statement, Mrs. Avant's statements and demeanor, broken glass on the den floor, and Mrs. Avant's complaints of injury, Gary was arrested and charged with bodily injury to an elderly person.

### 3. *Alexis Dorroh*

Alexis Dorroh, an administrator with the Bexar County Sheriff's Office, provided an audio recording of the 911 call. Rudes told the 911 operator, "[Gary's] beating up on my mom and we need some help." The audio recording was admitted into evidence; the audio recording was played twice for the jury, once during the State's direct examination and again during defense counsel's cross-examination.

The jury found Gary guilty of injury to an elderly person[1] and assessed punishment at eight-years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Gary contends that because Mrs. Avant's statements were testimonial in nature, and he was not presented with an opportunity to cross-examine her, Rudes's testimony violated his Sixth Amendment right to confront his accuser.

**SIXTH AMENDMENT RIGHT TO CONFRONTATION**

### A.      Right to Confrontation

In a criminal prosecution, a defendant has a Sixth Amendment right to question witnesses offering testimony against him. U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him. . . ."); *Gonzalez v. State*, 195 S.W.3d 114, 116 (Tex. Crim. App. 2006). "Even when hearsay offered against a defendant is admissible under evidentiary rules, that evidence may implicate the Confrontation Clause of the Sixth Amendment if the defendant is not afforded the opportunity to confront the out-of-court declarant." *Gonzalez*, 195 S.W.3d at 116 (citing *Shuffield v. State*, 189 S.W.3d 782, 790–91 (Tex. Crim. App. 2006)). The Confrontation Clause, however, only attaches to statements that are testimonial in nature. *Id.* (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)).

Our analysis necessarily begins with a determination as to why the statement was admitted. *See Sanders v. State*, No. 05-09-01337, 2011 WL 1843508, at *8–10 (Tex. App.—Dallas May 16, 2011, pet. ref'd) (not designated for publication) (looking first to whether statement was excited utterance and then whether testimonial in violation of Confrontation Clause). If the statement was properly admitted, we must determine whether the statement was testimonial in nature. *Id.* Here,

---

[1] The jury also made a finding of true regarding the State's enhancement allegation, as set forth in the indictment. *See* TEX. PENAL CODE ANN. § 12.42(a) (West Supp. 2015) (providing "if it is shown on the trial of a felony of the third degree that the defendant has previously been finally convicted of a felony other than a state jail felony . . . the defendant shall be punished for a felony of the second degree.").

the State contends the statements were properly admitted under the excited utterance hearsay exception. *See* TEX. R. EVID. 803(2).

     *1.    Hearsay Exception*

        a.    <u>Standard of Review</u>

We review the trial court's admission of the statements in question under an abuse of discretion standard. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court's ruling will stand if the ruling was within the zone of reasonable disagreement. *Id.*

        b.    <u>Excited Utterance</u>

"Hearsay" is "a statement that . . . the declarant does not make while testifying at the current trial . . . and a party offers in evidence to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801(d). Although exceptions exist, hearsay statements are generally inadmissible. TEX. R. EVID. 802; *Martinez v. State*, 178 S.W.3d 806, 811 (Tex. Crim. App. 2005). Once an objection is raised, the burden shifts to the party offering the testimony to establish the testimony falls within one of the recognized exceptions to the hearsay rule. *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008); *see* TEX. R. EVID. 802.

An excited utterance, one of the recognized exceptions, occurs when "[a] statement relating to a startling event or condition [is] made while the declarant was under the stress of excitement that it caused." TEX. R. EVID. 803(2). The rationale for allowing excited utterance testimony is "a psychological one, namely, the fact that when a man is in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood and the 'truth will come out.'" *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (quoting *Evans v. State*, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972)). In determining whether a statement is an excited utterance,

trial courts should determine "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition" when the statement is made. Factors that the trial court may consider include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a question, and whether the statement is self-serving.

*Apolinar v. State*, 155 S.W.3d 184, 186–87 (Tex. Crim. App. 2005) (footnotes omitted) (quoting *Zuliani*, 97 S.W.3d at 596); *see also Tienda v. State*, 479 S.W.3d 863, 875 (Tex. App.—Eastland 2015, no pet.).

### c. Mrs. Avant's Statements

The record supports Mrs. Avant called Rudes immediately after Gary yelled at Mrs. Avant and pushed her into the wall. Rudes testified Mrs. Avant was scared and requested Rudes call the police because Mrs. Avant "[couldn't] take it anymore." Rudes testified Mrs. Avant was upset, shaking, and crying. Rudes's testimony reasonably supports a determination that the upsetting events "still dominated [Mrs. Avant's] mind and that there was no time or opportunity to contrive or misrepresent the statements made to [Rudes] about the circumstances of the occurrence." *See Juarez v. State*, 461 S.W.3d 283, 296 (Tex. App.—Texarkana 2015, no pet.).

Rudes testified the statements were made immediately after Gary's outburst and that her mother expressed fear and frustration. Because the trial court could have reasonably concluded Mrs. Avant "was still dominated by the emotions, excitement, fear, or pain of the event," we cannot conclude the trial court abused its discretion in overruling Gary's hearsay objection. *See Apolinar*, 155 S.W.3d at 186–87; *see also* TEX. R. EVID. 803(2); *Juarez*, 461 S.W.3d at 296.

Having determined the statements were a proper exception under Rule 803(2), we next turn to whether admitting the statements violated the Confrontation Clause.

### 2. Confrontation Clause

In *Crawford v. Washington*, the United States Supreme Court held the Sixth Amendment prohibits the "admission of testimonial statements of a witness who did not appear at trial unless

he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53–54; *see also Amador v. State*, 376 S.W.3d 339, 341–42 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).  Generally, a statement is testimonial if it is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51 (alteration in original); *see also Grant v. State*, 218 S.W.3d 225, 230 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).  "In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 135 S. Ct. 2173, 2180 (2015) (alteration in original) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)).

We must, therefore, determine whether the statement in question was testimonial in nature. *See Vinson v. State*, 252 S.W.3d 336, 338 (Tex. Crim. App. 2008) ("[T]he [defendant] did not have a prior opportunity to cross-examine [the accuser].  Therefore, the admissibility of these statements through [someone else's] testimony hinges on the determination of whether the statements are testimonial or nontestimonial.").

a.      Standard of Review

Although a trial court's ruling on an evidentiary matter is viewed under an abuse of discretion standard, a constitutional legal ruling—such as the nature of a challenged statement—is reviewed de novo.  *See Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006); *see also Trigo v. State*, 485 S.W.3d 603, 610 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).  We review the determination regarding whether Mrs. Avant's statements were testimonial de novo. *Rodriguez v. State*, 274 S.W.3d 760, 765 (Tex. App.—San Antonio 2008, no pet.).

b.      Factors to Consider in Determining Whether Statements are Testimonial

In *Vinson*, 252 S.W.3d at 339, the Texas Court of Criminal Appeals set forth a non-exclusive list of factors to consider in determining whether a particular statement was testimonial:

1) whether the [emergency] was still in progress; 2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; 3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; 4) whether the questioning was conducted in a separate room, away from the alleged attacker; and 5) whether the events were deliberately recounted in a step-by-step fashion.

*Id.* (citing *Davis v. Washington*, 547 U.S. 813, 829–30 (2006)).

### c. Nature of Mrs. Avant's Statements

When Mrs. Avant called Rudes, Gary was still in the house and she was scared and obviously distressed. *See Rodriguez*, 274 S.W.3d at 765. The conversation focused on information regarding her mother's condition, safety, and any injuries. Rather than having Mrs. Avant wait at her home, Rudes instructed her mother to leave the residence. *See Clark*, 135 S. Ct. at 2180 ("[W]hen 'the primary purpose of an interrogation is to respond to an "ongoing emergency," its purpose is not to create a record for trial and thus is not within the scope of the [Confrontation] Clause.'" (second alteration in original)). Similar to placing the 911 call herself, Mrs. Avant was requesting that her daughter call the police. *See Reyes v. State*, 314 S.W.3d 74, 79 (Tex. App.—San Antonio 2010, no pet.) (providing "statements contained in the 911 recording are not testimonial"). Moreover, neither Mrs. Avant nor her mother displayed any desire to formally preserve the story, such as creating a written statement or a verbal recording, for later use in a trial. *See Clark v. State*, 282 S.W.3d 924, 932 (Tex. App.—Beaumont 2009, pet. ref'd) (concluding the testimony was not a step-by-step recreation of the events and was not formal); *Rodriguez*, 274 S.W.3d at 765 (determining questions were "objectively designed to determine what was presently happening and to assess the situation, not to memorialize a possible crime").

The relationship between Mrs. Avant, a ninety-year-old woman, and Rudes, her daughter, is also an important consideration. "Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial

than statements given to law enforcement officers." *Clark*, 135 S. Ct. at 2182 (distinguishing relationship of a pre-school student and teacher from that of a citizen and law enforcement officer). Mrs. Avant expressed fear when she called Rudes. The primary purpose for Mrs. Avant's telephone call was to seek help from Rudes, the person from whom Mrs. Avant regularly sought assistance.

Mrs. Avant called her daughter and spoke out of fear for her own safety. She requested Rudes call the police and then immediately left her residence. During her telephone conversation and the discussions at Rudes's residence, Mrs. Avant was upset, crying, and scared. *See Clark*, 135 S. Ct. at 2180; *Vinson*, 252 S.W.3d at 339. Moreover, there is no evidence to suggest the statements were made in an attempt to create a substitute for trial testimony. *See Clark*, 135 S. Ct. at 2108. Accordingly, we conclude the statements made by Mrs. Avant to Rudes were nontestimonial in nature.

## CONCLUSION

Based on the timing of Mrs. Avant's statements and the testimony that her emotions were still dominated by the assault by Gary, we cannot say the trial court's holding that the statements were excited utterances was outside the zone of reasonable disagreement or an abuse of discretion. *See Moses*, 105 S.W.3d at 627. Additionally, based on an objective review of the entire record, *see Clark*, 135 S. Ct. at 2180, we conclude the statements in question were nontestimonial: the primary purpose of Mrs. Avant's statements was to seek help from her daughter; they were made in the midst of an ongoing emergency and Mrs. Avant expressed distress and fear; and there is no evidence to support the statements were made for the purpose of providing testimony against Gary. We, therefore, conclude Mrs. Avant's statements were nontestimonial and the trial court's admission of the statements neither invoked the Sixth Amendment nor violated Gary's rights under the Confrontation Clause.

Accordingly, we overrule Appellant Gary Avant's sole issue on appeal.

Patricia O. Alvarez, Justice

PUBLISH