

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00260-CR

BOBBY CISNEROS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2018-414,545; Honorable John J. "Trey" McClendon III, Presiding

December 2, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Bobby Cisneros, appeals from his conviction by jury of the offense of aggravated assault with a deadly weapon[1] and the court-imposed sentence of fifty years of imprisonment.[2] Through a single issue on appeal, Appellant argues his rights to confront and cross-examine witnesses against him under the Sixth Amendment to the

---

[1] TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2019).

[2] Appellant pleaded "true" to two enhancement allegations contained in the indictment, elevating the applicable punishment range. See TEX. PENAL CODE ANN. § 12.42(d) (providing for penalties for repeat and habitual felony offenders on trial of first, second, or third degree felonies).

United States Constitution and article 1.25 of the Texas Code of Criminal Procedure were violated by the State's failure to present David Mikeal, the victim of the aggravated assault, as a witness at trial. We affirm the judgment of the trial court.

## BACKGROUND

At trial, the State presented witnesses as well as video and audio recordings to show that in the fall of 2017, Appellant went into the lobby of a Lubbock hotel, asking employees for a drink. He encountered Mikeal, the victim, who was sitting in the lobby. Employees of the hotel testified that the two interacted for a brief period and then Appellant left. Shortly thereafter, Appellant re-entered the hotel lobby, walked "straight over" to Mikeal from behind, and pulled something from his pocket. A hotel employee testified she saw that the object "looked to be a knife" and "it went into the back of [Mikeal's] head." Appellant also stabbed Mikeal in his legs, back, and hands. The responding officer told the jury that when he arrived at the hotel, he saw two individuals in the lobby and both "were covered in what appeared to be blood." The officer saw a knife in Appellant's hand and told him to drop the knife. Appellant complied.[3] Surveillance video from the hotel showing the assault was shown to the jury.

Both Appellant and Mikeal spoke with police. One police officer testified Appellant said that when he initially saw Mikeal in the hotel lobby, Mikeal "made a gun motion with his finger, made a clicking sound, like he was going to shoot him." Appellant also told police that Mikeal had been trying to lure him to a fast food restaurant, that "people follow him" and that there "was another guy waiting in a tree with a gun." The officer characterized Appellant's statements as "inconsistent" and

---

[3] Two knives were later recovered from the scene.

agreed that some statements were erratic.[4]  Another officer spoke with Mikeal while he was at the hospital.  During that conversation, police learned Mikeal was homeless and had last lived in New Mexico.  The details of that conversation were not introduced before the jury.

Other witnesses testified to statements made by Mikeal prior to being taken to the hospital.  And, medical records containing Mikeal's statements were admitted into evidence.  However, Mikeal did not testify.[5]  At the close of the State's case, Appellant's counsel moved the trial court to instruct the jury to enter a verdict of not guilty.  As grounds for his motion, counsel pointed out that the State raised the issue of self-defense in its questioning of police.  If, he asserted, self-defense was going to be an issue for the jury to consider, Appellant's Sixth Amendment right to confront and cross-examine the witnesses against him had been violated because Mikeal did not testify.[6]  Counsel also argued that Appellant's rights had been violated because "we don't know what [Mikeal's] statement is because it's not in evidence."  Without Mikeal's testimony, Appellant argued, the jury was left with the impression that Mikeal was simply a victim and Appellant was denied the opportunity to elicit testimony to show Mikeal was the aggressor or that his actions led Appellant to believe his actions were necessary to defend himself.  Counsel objected also to his inability to put before the jury evidence of

---

[4] A recording of a jail visit between Appellant and another individual was admitted at trial.  Appellant is heard saying, "[i]ce makes me evil and wicked, and it makes me think things that aren't there."

[5] During trial, the State told the court they were unable to subpoena Mikeal because he was in New Mexico.

[6] The court included in its charge to the jury an instruction regarding self-defense.

Mikeal's "extensive criminal history," much of which showed violent crimes.[7] The trial court denied counsel's request for a directed verdict of not guilty.

**ANALYSIS**

While Mikeal did not appear as a witness at trial, several of his statements were admitted into evidence through witness testimony and documentary evidence. Those included: (1) his screams "for help" during the attack; (2) his repetitive statements to Appellant during the assault that "My wallet's over there, my money's over there, just take it"; (3) his statements to police officers immediately after the stabbing asking "for his keys," telling the officers "he had been stabbed in his head" and that Appellant "had tried to take his wallet"; and (4) his statements contained in his medical records made to medical personnel that he reported the unknown "assailant had a curved like knife approx. 4 inches" and that he "did not know the person that stabbed him and [he] was stabbed over money."

Pursuant to the Sixth Amendment to the United States Constitution, an accused "shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. A similar right appears in the Texas Constitution. TEX. CONST. art. 1, § 10 (stating that the accused "shall be confronted by the witnesses against him . . . ."). Article 1.25 of the Texas Code of Criminal Procedure also provides, "[t]he defendant, upon a trial, shall be confronted with the witnesses . . . ." TEX. CODE CRIM. PROC. ANN. art. 1.25. The key purpose of that right "'is to secure for the opponent the opportunity of cross-examination[,]' because that is 'the principal means by which the

---

[7] The trial court did permit defense counsel to elicit testimony from a police officer that Mikeal had a "non-extraditable warrant" for his arrest issued out of New Mexico.

believability of a witness and the truth of his testimony are tested.'" *Johnson v. State,* 433 S.W.3d 546, 551 (Tex. Crim. App. 2014) (quoting *Davis v. Alaska,* 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)).

However, this right applies only to statements that are testimonial. As such, we must first determine why Mikeal's statements were admitted at trial. *See Avant v. State,* 499 S.W.3d 123, 127 (Tex. App.—San Antonio 2016, no pet.) ("Our analysis necessarily begins with a determination as to why the statement was admitted."). We must then determine whether the statements admitted at trial were testimonial in nature, thus necessitating his presence at trial so that Appellant could have the opportunity to confront and cross-examine him. *Id.* at 128.

### RULES OF EVIDENCE

"Hearsay" is a "statement that . . . the declarant does not make while testifying at the current trial . . . and a party offers in evidence to prove the truth of the matter asserted in the statement." *Id.* at 127 (citing TEX. R. EVID. 801(d)). Although exceptions exist, hearsay statements are generally inadmissible. *Id.* (citing TEX. R. EVID. 802; *Martinez v. State*, 178 S.W.3d 806, 811 (Tex. Crim. App. 2005)). Once an objection is raised, the burden shifts to the party offering the testimony to establish the testimony falls within one of the recognized exceptions to the hearsay rule. *Id.* (citing *Taylor v. State*, 268 S.W.3d 571, 578-79 (Tex. Crim. App. 2008); TEX. R. EVID. 802).

An excited utterance, one of the recognized exceptions, occurs when "[a] statement relating to a startling event or condition [is] made while the declarant was under the stress of excitement that it caused." *Avant,* 499 S.W.3d at 127 (citing TEX. R.

5

EVID. 803(2)). The reason for permitting excited utterance testimony is "a psychological one, namely, the fact that when a man is in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood and the 'truth will come out.'" *Id.* (citing *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003)). In determining whether a statement is an excited utterance, courts are to determine whether the person making the statement was "still dominated by the emotions, excitement, fear, or pain of the event or condition" at the time the statement was made. *Apolinar v. State*, 155 S.W.3d 184, 186-87 (Tex. Crim. App. 2005) (footnotes omitted) (quoting *Zuliani*, 97 S.W.3d at 596). In making this determination, courts may consider the length of time between the occurrence and the statement, the nature of the declarant, whether the statement was made in response to a question, and whether the statement is self-serving. *Id.* at 187.

Mikeal's statements during the assault, i.e., his screams for help and his statement to Appellant to take his wallet, occurred while Mikeal was being stabbed. The general manager of the hotel testified she heard Mikeal make those statements as he was being stabbed. The front-desk employee testified similarly. Mikeal's screams for "help" can also be heard on the 911 recording. Thus, the record supports that these statements were made while Appellant was still dominated by the emotion, fear, or pain of the stabbing. *Avant,* 499 S.W.3d at 127 (citing TEX. R. EVID. 803(2)). The same can also be said for Mikeal's statements to the police as they spoke to him just after he was stabbed. Very little time had elapsed since the assault and Appellant was still in the hotel lobby, sitting cross-legged on the floor and bleeding from the numerous stab wounds, when he told the police he had been stabbed in the head, that Appellant tried

6

to take his wallet, and expressed his concern over his keys. Therefore, we find these statements were given under conditions which satisfy the excited utterance exception. *Avant,* 499 S.W.3d at 127-28.

Another exception to the hearsay rule applies to Mikeal's statements contained within the medical records admitted into evidence. Rule 803(4) provides, "[a] statement that: "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause" are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness. TEX. R. EVID. 803(4). Mikeal's statements within the records that an unknown "assailant had a curved like knife approx. 4 inches" and that Mikeal "did not know the person that stabbed him and [he] was stabbed over money" were made during the course of his treatment for multiple stab wounds. Mikeal's statement regarding the weapon with which he was stabbed clearly falls within the exception allowing statements made for the purposes of medical diagnosis or treatment because it provides information regarding the cause or inception of his wounds. TEX. R. EVID. 803(4).

Mikeal's statements indicating his wounds occurred during what sounded like a robbery by an unknown assailant were not, however, directly pertinent to his medical diagnosis or treatment. However, those statements were cumulative of the evidence admitted through police testimony and thus, any error in their admission was harmless. *See Sanders v. State,* 422 S.W.3d 809, 817-18 (Tex. App.—Fort Worth 2014, pet. ref'd) (finding any error in admission of statement in violation of defendant's right to confrontation was harmless in view of uncontroverted other, unobjected-to evidence that

7

established same facts). *See also Faglie v. State,* No. 03-17-00281-CR, 2019 Tex. App. LEXIS 1325, at *22 (Tex. App.—Austin Feb. 22, 2019, no pet.) (mem. op., not designated for publication) (stating "[i]t is well settled that the improper admission of evidence is rendered harmless when other evidence proving the same fact is properly admitted elsewhere (or comes in elsewhere without objection)").

### CONFRONTATION CLAUSE

Whether a particular out-of-court statement is testimonial is a question of law to be determined by the trial court. *Langham v. State,* 305 S.W.3d 568, 576 (Tex. Crim. App. 2010) (citation omitted). While we defer to the trial court's resolution of credibility issues and historical fact, we review *de novo* the ultimate constitutional question of whether the facts establish that an out-of-court statement is testimonial. *Id.* (citation omitted). Statements made in response to police inquiries may not be testimonial if the circumstances, viewed objectively, show that it was made "to enable police assistance to meet an ongoing emergency" and the primary purpose of the interrogation is not to establish or prove past events potentially relevant to later criminal prosecution. *Id.* (citations omitted).

The Court of Criminal Appeals has interpreted "primary" in this context to mean "first in importance" rather than "first in time." *Langham,* 305 S.W.3d at 579. Therefore, we must determine whether the primary purpose of the statements in question was to establish or prove past events possibly relevant to later criminal prosecution, as asserted by Appellant, or whether the primary purpose was to enable the police to meet an ongoing emergency as asserted by the State. *Langham,* 305 S.W.3d at 576.

8

The Court in *Langham* discussed two cases involving domestic disturbances, *Davis v. Washington,* 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), and *Vinson v. State,* 252 S.W.3d 336 (Tex. Crim. App. 2008). Those cases recognized that when the police are called upon to respond to emergency situations, they often find it necessary to ask questions while discharging their duties that are likely to elicit responses about criminal behavior. *Langham,* 305 S.W.3d at 579 (citations omitted). But for as long as the emergency situation is still ongoing, the "primary purpose" of the communication is not to develop a factual predicate for later litigation; instead, it is to decide how to respond appropriately to the situation. *Id.* The exchange cannot be said to have been undertaken for the "primary" purpose of memorializing facts for future prosecution. *Id.* "Once the emergency is resolved, however, any continuing or subsequent interrogation may well provoke a testimonial response for Confrontation Clause purposes because, at that juncture, '[o]bjectively viewed, the primary, if not the sole, purpose of the interrogation [has become] to investigate a possible crime[.]'" *Id.* (citation omitted).

Each of Mikeal's statements admitted at trial were statements made during or in the aftermath of the assault. The statements made during the assault cannot reasonably be seen as statements intended to produce evidence in anticipation of a potential criminal prosecution. Those statements were made at a time when Mikeal was seeking help from civilians around him and when he was attempting to stop Appellant from continuing to stab him. *See Avant,* 499 S.W.3d at 129 (primary purpose of victim calling her daughter was to seek help, not to attempt to create a substitute for trial testimony); *Reyes v. State,* 314 S.W.3d 74, 79 (Tex. App.—San Antonio 2010, no pet.)

(finding statements in 911 recording were not testimonial). *See also Pelletier v. State,* No. 14-18-00008-CR, 2019 Tex. App. LEXIS 5164, at *7 (Tex. App.—Houston [14th Dist.] June 20, 2019, pet. ref'd) (mem. op., not designated for publication) (in case in which complainant did not testify, the court found the complainant's statements, initially made over the telephone to her father and then in the middle of a motel parking lot, "were neither official and formal in nature nor solemn declaration[s] made for the purpose of establishing some fact").

The statements made to the police by Mikeal were made under circumstances intended to enable the police to meet an ongoing emergency. *See Langham,* 305 S.W.3d at 576. The officer who spoke to Mikeal agreed that at the time the statements were made, the police were "still trying to determine the cause of this, investigate anything else that you can about the incident." Many courts have found that "initial police-victim interaction at the scene of an incident is not an interrogation and that admission of testimony about that interaction does not offend the Confrontation Clause." *Key v. State,* 173 S.W.3d 72, 75-76 (Tex. App.—Tyler 2005, pet. ref'd) (collecting cases). As such, we agree with the State that those statements were not testimonial in nature and the admission of those statements without Mikeal's presence at trial did not violate Appellant's Sixth Amendment right of confrontation of witnesses, nor did it violate his right of confrontation under Texas law. *Rendon v. State,* No. 04-16-00014-CR, 2017 Tex. App. LEXIS 8263, at *10-11 (Tex. App.—San Antonio Aug. 30, 2017, no pet.) (mem. op., not designated for publication).

Furthermore, the law is clear that medical records made for the purposes of treatment are non-testimonial. *Melendez-Diaz v. Massachusetts*, 577 U.S. 305, 312

n.2, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009). Thus, Mikeal's statement regarding the knife used to inflict his stab wounds, made during the course of his medical treatment, was not testimonial in nature and the Sixth Amendment was not implicated.

Having determined Mikeal's statements fell within exceptions to the rule against hearsay and that those statements were not testimonial in nature, we find Appellant's rights under the Sixth Amendment to the United States Constitution and article 1, section 10 of the Texas Constitution, as well as article 1.25 of the Texas Code of Criminal Procedure, were not violated. Consequently, we overrule Appellant's issue.

### CONCLUSION

Having overruled Appellant's sole issue, we affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

Do not publish.