COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
| --- | --- | --- |
| | | No. 08-19-00178-CR |
| EX PARTE: | § | |
| | | Appeal from the |
| DANNY SALCIDO. | § | |
| | | 120th District Court |
| | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC# 20150D02954-120-1) |
| | § | |

# **O P I N I O N**

Appellant Danny Salcido was charged with the third-degree felony offense of family-violence assault committed by impeding the normal breathing or circulation of the blood of a person by applying pressure to the person's neck or by blocking the person's nose or mouth. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (family-violence assault by strangulation). The complaining witness of the charge was his wife, Diana Salcido. After a jury trial, Salcido was convicted of the lesser-included charge of family-violence assault even though Diana provided no testimony. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (class-A misdemeanor family-violence assault).

On direct appeal, Salcido raised two arguments with this Court about his conviction: (1) that the trial court erred by admitting certain items of evidence to include the out-of-court

statements made by Diana on a recorded 911 call, which were also included in an associated computer-aided dispatch (CAD) record, as well as related statements she similarly made to the responding police officer, with all items of evidence admitted in contravention of the Confrontation Clause; and (2) that, assuming his Confrontation Clause objections were waived by trial counsel's failure to timely object on that basis, Salcido argued that trial counsel rendered ineffective assistance of counsel by failing to so object. Rejecting Salcido's arguments, we held that he had waived his Confrontation Clause complaints by failing to timely object at trial, and further held that no deficient performance was shown given the absence of any testimony from trial counsel explaining the reasons for his trial omissions or inactions.

Soon after we issued our mandate on Salcido's direct appeal, he filed an application for a post-conviction writ of habeas corpus under article 11.072 of the Code of Criminal Procedure in which he carried forward his ineffective assistance of counsel claim. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 1. After receiving the State's answer and an affidavit from trial counsel, the habeas court, which was presided over by the same judge who had presided over Salcido's jury trial, denied relief.

Now, in a single issue in which Salcido appeals the denial of his application for a writ of habeas corpus, Salcido argues that the court erred by denying relief on his claim of ineffective assistance of counsel. Specifically, he complains about trial counsel's failure to make Confrontation Clause objections on a timely basis to the admission of Diana's out-of-court statements as admitted through a variety of forms: (1) the 911 recording, a transcript of the recording, and associated CAD record for the call; (2) Officer Talamantes' testimony about Diana's out-of-court statements made to him after he responded to her call; and (3) Officer

2

Talamantes' testimony about Diana's out-of-court statements made to him upon his subsequent arrival at a hospital to which Diana was taken for treatment. We affirm the habeas court's judgment because, for each complained-of source of evidence, Salcido has failed to prove either the deficient performance or prejudice prongs of an ineffective assistance of counsel claim under *Strickland* to establish his entitlement to post-conviction relief.

## BACKGROUND

*Statement on the State of the Appellate Record*

As a preliminary matter, we begin with the state of the record pertaining to the appeal of a writ proceeding. In his briefing, Salcido cites not only to the writ proceeding below but also to the reporter's record of his underlying jury trial. And, despite the trial court also making similar references in its findings of fact and conclusions of law, Salcido did not formally offer nor seek admission of the reporter's record of his jury trial during his writ proceeding. And nowhere in the clerk's record or reporter's record of this cause is there any indication that the trial court took judicial notice of any record from Salcido's jury trial.

Ordinarily, a deficiency of a record to support what occurred in a jury trial on which a post-conviction writ is based would likely be detrimental to an applicant's ability to prove entitlement to relief. *See Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016) (instructing that an applicant for a post-conviction writ of habeas corpus bears the burden of proving his claim by a preponderance of the evidence). However, without explaining how or why we should consider the reporter's record from Salcido's jury trial, the State likewise appears to have adopted the jury trial record as being a part of the record in this appeal by also citing to it in its briefing without comment or objection.

3

As recognized by the Court of Criminal Appeals, "the general rule is that an appellate court cannot go to the record of another case for the purpose of considering testimony found there but not shown in the record case before it." *Fletcher v. State*, 214 S.W.3d 5, 7 (Tex. Crim. App. 2007) (quoting *Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987)). But the Court of Criminal Appeals has also instructed that "an appellate court may take judicial notice of its own records in the same or related proceedings involving [the] same or nearly same parties[.]" *Fletcher*, 214 S.W.3d at 7 (quoting *Turner*, 733 S.W.2d at 223) (internal citations omitted). In applying *Fletcher* in the context of an appeal from a post-conviction ruling, some of our sister courts have found it permissible to take judicial notice of the appellate record stemming from the direct appeal of a case. *See State v. Bryan*, No. 11-17-00236-CR, 2019 WL 6337604, at *2 (Tex. App. – Eastland Nov. 27, 2019, no pet.) (mem. op., not designated for publication) (rejecting the State's contention on appeal from a ruling on a post-conviction DNA motion that the appellate court could not consider the trial record from the defendant's conviction because it was not offered as a part of the record in the hearing on the post-conviction motion and, instead, holding that "we may take judicial notice of the contents of our file in the direct appeal of the conviction"); *Ex parte Cox*, Nos. 14-09-00102-CR, 14-09-00103-CR, 2009 WL 1057338, at *1-2 (Tex. App. – Houston [14th Dist.] Apr. 21, 2009, no pet.) (mem. op., not designated for publication) (rejecting the State's contention that the defendants were not entitled to relief on their post-conviction claims because they failed to produce the record from their first trial to the habeas court and holding instead, in "this unique situation in which appellants complain of ineffective assistance of counsel on appeal[,]" that the appellate court could take judicial notice of its own records from the defendants' direct appeal filed in the appellate court).

Here, lacking any challenge, complaint or briefing on this issue, we expressly decline to adopt a holding on whether we can properly take judicial notice of the record from a separately filed appeal. Nonetheless, under these circumstances where both parties have cited to the appellate record of a separately filed case involving the same parties and same case and neither party has raised any challenge to the other party having cited to the record in this manner, we will ourselves take judicial notice of the record from Salcido's direct appeal which was previously filed in our appellate cause number, 08-16-00284-CR, and styled, *Salcido v. State*. *See Salcido v. State*, No. 08-16-00284-CR, 2018 WL 4660091 (Tex. App. – El Paso Sep. 28, 2018, pet. ref'd) (not designated for publication).

**The Overall Evidence Presented at Trial**

On May 27, 2015, Salcido's wife, Diana, pulled into the emergency lane of a highway with her three-month-old baby in the backseat of the vehicle. From this location, she called 911 and advised the dispatcher that she had left her home after Salcido hit and kicked her.

At trial, the State introduced into evidence the 911 call, the call's associated CAD record, the testimony of both the responding officer, Richard Talamantes, and the arresting officer to whom Salcido voluntarily surrendered himself a few days later, Diana's medical records, and photographs of Diana's injuries. Diana did not testify at trial.

Salcido did not present any evidence after the State rested.

**The 911 Call and CAD Record**[1]

---

[1] Although Salcido argues in this appeal that both Diana's 911 call and its associated CAD record were testimonial, he does not point to any specific contents of the CAD record that reflect information beyond that contained in the 911 call. Our review of the CAD record likewise reveals no unique information contained only in the CAD record that is relevant to our resolution of this appeal. Therefore, our opinion will refer only to the contents of Diana's 911 call when addressing these two pieces of evidence together.

5

At the time the State offered the 911 and CAD record into evidence, trial counsel objected to the admission of both based on improper foundation. The trial court overruled the objection and admitted the records, and the State continued to elicit several pages worth of testimony from the sponsoring witness. After the State published the 911 call to the jury, trial counsel belatedly lodged a Confrontation Clause objection to the call. The trial court noted that trial counsel had not made a Confrontation Clause objection at the time the evidence was offered and had only objected on the basis of improper foundation, and the trial court declared that the records were already in evidence. Nonetheless, the trial court listened to the recording outside the jury's presence and overruled trial counsel's belated Confrontation Clause objection.

At the outset of the 911 call, the 911 operator obtained Diana's location on Highway 54 and McCombs in El Paso before asking Diana what was going on. While frantic, crying, and speaking quickly and loudly, Diana said that she wanted to "report a domestic violence" and that she "just got out of the house" because her husband hit her and struck her against the floor "right now." The 911 operator then confirmed from Diana that her assailant was her husband, was at 11768 Jim Webb, was not under the influence, and did not have any weapons. The 911 operator asked for Diana's name, asked what she was wearing, and asked for a description of her vehicle. After confirming that Diana was parked in the emergency lane of the highway, the 911 operator asked if Diana needed an ambulance. Although Diana refused an ambulance, she said that her arm hurt because her husband kicked her elbow. Pursuant to the 911 operator's remaining questions, Diana identified Salcido, gave his name and date of birth, described his physical features and clothing, and gave the make and model of his vehicle. The 911 operator then told Diana that the information had been passed along and that an officer was on the way to her precise location on

6

the highway, and the 911 operator asked Diana to turn on her hazard lights.

**Officer Talamantes' Testimony about Diana's Out-of-Court Statements Made upon His Arrival to Her Location on the Highway**

Officer Talamantes testified at trial that he arrived at the scene within about a minute of being dispatched. He saw Diana's vehicle on the shoulder of the highway, parked behind it, and upon his approach, he saw Diana and her crying three-month-old infant inside. Diana looked "shaken up," her hands were shaking, she appeared scared, and she was crying, as well. Officer Talamantes did not know where the assailant was at that point in time, and he had Diana identify herself and explain what happened. Before Officer Talamantes testified about Diana's out-of-court statements at the scene, trial counsel made an objection in which he referenced his belief that "there is no ongoing emergency" but asserted as the legal basis of his objection only that the out-of-court statements were hearsay, and the trial court overruled his objection.

In a brief conversation that lasted only about a minute, Diana told Officer Talamantes that she had been assaulted by her husband, Salcido, who was an ex-Las Cruces police officer, and she was concerned that Officer Talamantes would not do anything about her situation due to her husband's law-enforcement affiliation. Diana stated that she left her house in a hurry, and she also complained of pain to her arm. At that point, two other officers arrived at the scene, and based on the noise from the nearby traffic and Diana's complaint of arm pain, Officer Talamantes drove Diana to a nearby hospital. The other two officers went to Diana's home to try to locate Salcido.

**Officer Talamantes' Testimony about Diana's Out-of-Court Statements Made upon His Arrival at the Hospital**

As the hospital was in close proximity, Officer Talamantes and Diana arrived at the hospital within a minute or so. After Diana was taken to a pre-examination room so that her vitals could

7

be checked, Officer Talamantes was able to speak with her further after only a few additional minutes. Diana still appeared to be scared and "shaken up."

Trial counsel made a hearsay objection to Diana's out-of-court statements to Officer Talamantes while in the hospital room, but the trial court overruled the objection. In that hospital room, Diana proceeded to tell Officer Talamantes in detail how Salcido assaulted her in their home. When Diana confronted Salcido about her suspicion of him cheating on her, he pushed her, threw her to the floor, kicked her, and choked her to the point where she could not breathe. When Salcido saw Diana was running out of breath, he let go of her neck and pounded her head against the floor multiple times. After letting Diana up and asking her if she was going to leave him, Diana said she was going to do so, and Salcido pushed her to the floor, got on top of her, and struck her in the chest with a ruler. Only when Salcido got a phone call about a potential job was Diana able to flee with her baby.

### The Remaining Evidence: Photos and Testimony Relating to Diana's Injuries and Diana's Medical Records

Photos of Diana taken at the hospital were admitted into evidence and showed a red mark on the right side of her chest and redness around her neck. Officer Talamantes also testified at trial that, as he spoke with Diana, he saw a red mark on her chest and saw some redness on her neck that, based on his training and experience, was consistent with her having been grabbed around the neck. Officer Talamantes also saw that Diana was cradling her elbow as though it were in pain throughout the entirety of their interactions.

Diana's medical records from the hospital reflected that she reported being assaulted by her spouse while her infant was at their bedside. Her spouse hit her with his fists, kicked her, pushed and threw her, and choked her. Her hospital diagnosis showed that she had bruises on her

8

face and neck area, stomach, and elbow. She reported feeling pain on her head, face, stomach, and elbow, and she reported her pain as a "10" on a scale of 1-to-10. Based on Diana's statements to hospital staff, the hospital ordered a CT scan on her head and x-rays on her elbow.

After Officer Talamantes finished speaking with Diana at the hospital, he prepared an arrest warrant for Salcido. Two days after the assault, Salcido went to the police station to turn himself in for the pending warrant.

**The Verdict**

Although Salcido was indicted for the third-degree felony of family-violence assault by impeding Diana's breath or circulation, the jury instead convicted Salcido of the lesser-included class-A misdemeanor of family-violence assault. Pursuant to an agreed-upon sentence by the State and Salcido, the trial court sentenced Salcido to 365 days' confinement, suspended the sentence, and placed Salcido on 2 years' community supervision.

**The Direct Appeal**

In *Salcido v. State*, this Court addressed Salcido's direct appeal from his conviction. *See Salcido v. State*, No. 08-16-00284-CR, 2018 WL 4660091 (Tex. App. – El Paso Sep. 28, 2018, pet. ref'd) (not designated for publication). On direct appeal, Salcido argued that the trial court committed reversible error by admitting Diana's out-of-court statements that she made on her 911 call and its associated CAD record, as well as the additional statements she made to the responding officer, Officer Talamantes. *Id.*, at *1-3. Salcido also argued that, assuming his Confrontation Clause issues were waived by trial counsel's failure to lodge timely objections, that trial counsel had rendered ineffective assistance of counsel by failing to so object. *Id.*, at *4. On direct appeal, we held that Salcido failed to preserve his Confrontation Clause argument by failing to object on

9

that particular basis, as opposed to the improper-foundation and hearsay objections that trial counsel instead lodged. Moreover, we further held that Salcido failed to show deficient performance for his ineffective-assistance claims where the record on appeal was silent as to why trial counsel failed to make such objections at trial, and we affirmed the trial court's judgment. *Id.*, at *2, 4-5.

### The Writ Proceeding

Shortly after we issued our mandate in Salcido's direct appeal, he filed his application for a post-conviction writ of habeas corpus under article 11.072 of the Code of Criminal Procedure. In his application, Salcido once again asserted the ineffective-assistance arguments that he made on direct appeal regarding trial counsel's failure to raise Confrontation Clause objections to admission of Diana's out-of-court statements through the following sources of evidence during trial: (1) the 911 call and associated CAD record; (2) Officer Talamantes' testimony about Diana's out-of-court statements made to him upon his arrival to her location on the highway; and (3) Officer Talamantes' testimony about Diana's out-of-court statements made to him at the hospital. Salcido asserted that he suffered prejudice from these failures because trial counsel's failure to object "let in the only substantive evidence of assault" where the victim did not testify at trial.

The State filed an answer to Salcido's writ application. In response to Salcido's ineffective-assistance complaint regarding the 911 call and CAD record, the State contended that Salcido failed to prove deficient performance because the trial court excused the jury and reconsidered admission of those items of evidence under the belated Confrontation Clause objection, despite the court's initial comment that the objection was untimely. The State additionally responded to Salcido's complaints regarding each of the three sources of evidence by

10

contending that he failed to prove deficient performance because Diana's out-of-court statements were nontestimonial and therefore did not implicate the Confrontation Clause. Finally, the State responded that Salcido failed to prove prejudice by the trial court's admission of each source of evidence because exclusion of any such challenged evidence would not have changed the outcome of the trial due to admission of other evidence, which aside from the challenged evidence still included Officer Talamantes' testimony regarding Diana's demeanor and visible injuries as he saw them at the scene, photographs showing Diana's injuries, and medical records reflecting that Diana sought treatment for injuries she sustained after being assaulted by Salcido.

The habeas court held a hearing on Salcido's writ application, and at the hearing, the court admitted an affidavit from Salcido's trial counsel. In trial counsel's affidavit, he explained the nature of his objections by attesting that he anticipated the trial court would address the substance of his objections differently, and trial counsel further attested, "I don't believe it was necessarily a mistake to object in the manner that I did."

Following the writ hearing, the habeas court entered findings of fact, conclusions of law, and its order denying relief. The habeas court entered the following findings of fact relevant to our resolution of this appeal: (1) Diana called 911 "in a frantic voice, upset and crying" and "was distraught and crying throughout the call"; and (2) during the "brief contact" that Officer Talamantes had with Diana, who had pulled her vehicle into an emergency lane of the highway, she was "under emotional distress" and was "shaking and crying." Although some were styled as findings of fact, the habeas court also entered the following conclusions of law: (1) Diana's statements on her 911 call were nontestimonial; (2) Diana's statements to Officer Talamantes both at the scene and at the hospital were nontestimonial; (3) trial counsel did not render deficient

11

performance because any Confrontation Clause objections to Diana's out-of-court statements would not have been meritorious; and (4) even assuming Salcido had a meritorious objection to admission of Officer Talamantes' testimony about Diana's out-of-court statements, Salcido was not prejudiced in light of the remaining evidence presented at trial.[2]

Salcido timely filed his notice of appeal from the habeas court's order denying relief on his writ application.

## DISCUSSION

In this appeal, Salcido carries forward the same ineffective-assistance arguments that he made in his writ application, namely, that trial counsel rendered ineffective assistance by failing to raise Confrontation Clause objections to admission of Diana's out-of-court statements through the 911 call and associated CAD record, the testimony from Officer Talamantes about his conversation with Diana on the side of the highway, and the testimony from Officer Talamantes about his conversation with Diana at the hospital. The State likewise carries forward the same arguments from its writ answer that Salcido failed to show deficient performance regarding admission of the 911 call and CAD record where the trial court ultimately considered his Confrontation Clause objection before overruling it, that Salcido failed to show deficient performance regarding admission of each complained-of source of Diana's out-of-court statements where all of Diana's statements to the 911 operator and to Officer Talamantes were nontestimonial and therefore did not implicate the Confrontation Clause, and that Salcido failed to prove prejudice where exclusion of any one of the complained-of sources of evidence would not have changed the

---

[2] We note that, regardless of how a trial court labels its findings of fact and conclusions of law, an appellate court must examine the substance of the findings and conclusions and treat them by their substance rather than by their label. *State v. Ambrose*, 487 S.W.3d 587, 597 (Tex. Crim. App. 2016).

12

outcome of the trial due to the remaining evidence available to the jury.

We hold that Diana's out-of-court statements made on her 911 call and associated CAD record and made to Officer Talamantes upon his arrival to her car on the side of the highway were nontestimonial. Thus, the trial court would have properly admitted these statements even in the face of a Confrontation Clause objection, and Salcido has failed to prove deficient performance regarding the admission of Diana's out-of-court statements under these circumstances. And even assuming that Diana's out-of-court statements to Officer Talamantes at the hospital were testimonial and that the trial court would have erred by admitting them over a Confrontation Clause objection, we hold that Salcido failed to prove prejudice from admission of the statements Diana made at the hospital in light of the remaining evidence that was available to the jury. Thus, we ultimately affirm the habeas court's order denying relief on Salcido's writ application.

### *Standard of Review and Burden of Proof*

An applicant for a post-conviction writ of habeas corpus bears the burden of proving his claim by a preponderance of the evidence. *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016). Normally, we review the habeas court's ruling on an application for a writ of habeas corpus for an abuse of discretion. *Ex parte Salim*, --- S.W.3d ---, Nos. 02-19-00200-CR, 02-19-00201-CR, 2020 WL 241967, at *6 (Tex. App. – Fort Worth Jan. 16, 2020, no pet.); *Ex parte Garcia-Escontrias*, No. 08-18-00203-CR, 2019 WL 6713282, at *2 (Tex. App. – El Paso Dec. 10, 2019, no pet.) (not designated for publication). As the habeas court is the sole finder of fact in a post-conviction application for writ of habeas corpus filed under article 11.072, we afford almost total deference to a habeas court's factual findings in this setting when they are supported by the record. *Ex parte Torres*, 483 S.W.3d at 42. However, we review de novo pure questions of law and

13

application-of-law-to-fact questions that do not turn on credibility and demeanor. *Ex parte Beck*, 541 S.W.3d 846, 852 (Tex. Crim. App. 2017). We will uphold the habeas court's ruling if it is correct on any theory of law applicable to the case. *Id*.

### *Ineffective-Assistance Claims Based on a Failure to Object to Evidence*

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel for their defense. U.S. Const. amend. VI; *Garza v. Idaho*, 139 S.Ct. 738, 743 (2019). To establish entitlement to relief on the basis of ineffective assistance of counsel under the two-pronged *Strickland* test, a defendant must prove that: (1) counsel's performance was deficient, i.e., that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense, i.e., that but for counsel's errors there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Regarding the prejudice prong, a reasonable probability is a probability sufficient to undermine confidence in the outcome. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A failure to prove either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

To establish ineffective assistance of counsel based on a failure to object, a defendant must demonstrate that the trial court would have committed harmful error in overruling the objection if trial counsel had objected. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004); *DeLeon v. State*, 322 S.W.3d 375, 381 (Tex. App. – Houston [14th Dist.] 2010, pet. ref'd).

### *Determining Whether a Statement is Testimonial or Nontestimonial under the Confrontation Clause: the "Primary Purpose" Test*

The Confrontation Clause of the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 42 (2004); *Pointer v. Texas*, 380 U.S. 400, 406 (1965). The Confrontation Clause prohibits the admission of "testimonial" out-of-court statements by a witness who does not appear at trial unless: (1) the witness is unavailable to testify; and (2) the defendant had a previous opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 53-54. Once a defendant raises a Confrontation Clause objection, the burden shifts to the State to prove either that: (1) the proffered statement does not contain testimonial hearsay and thus does not implicate the Confrontation Clause; or (2) the statement does contain testimonial hearsay but is nevertheless admissible. *See De la Paz v. State*, 273 S.W.3d 671, 680-81 (Tex. Crim. App. 2008). In the instant appeal, the parties are concerned with only the first avenue for admissibility.

A statement is testimonial if "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 135 S.Ct. 2173, 2180 (2015) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). As one example of a situation where the primary purpose of a statement is nontestimonial, the Supreme Court of the United States held in *Michigan v. Bryant* that the statements made by a victim about his assailant were not testimonial because the circumstances objectively indicated that the conversation was primarily aimed at enabling police assistance to meet an ongoing emergency, not establishing evidence for the prosecution. *Bryant*, 562 U.S. at 377-78; *see also Clark*, 135 S.Ct. at 2180. Ultimately, where the primary purpose of an out-of-court statement was not to create an out-of-court substitute for trial testimony, the out-of-court statement is nontestimonial and the Confrontation Clause is simply not implicated. *See Clark*, 135

15

S.Ct. at 2180.

### *Failure to Object to 911 Call and CAD Record*

*Applicable Law*

911 calls initiated to summon police assistance are generally nontestimonial because they are "a cry for help" or "the provision of information enabling officers to end a threatening situation." *See, e.g.*, *Duchesneau v. State*, Nos. 02-18-00321-CR, 02-18-00322-CR, 2019 WL 2455619, at *2 (Tex. App. – Fort Worth June 13, 2019, pet. ref'd) (mem. op., not designated for publication) (quoting *Davis v. Washington*, 547 U.S. 813, 832 (2006)); *Colbert v. State*, No. 03-17-00558-CR, 2019 WL 1065889, at *3 (Tex. App. – Austin Mar. 7, 2019, pet. ref'd) (mem. op., not designated for publication).

In *Davis v. Washington*, the Supreme Court of the United States addressed whether statements made by a victim of domestic violence to a 911 operator were testimonial in nature. *See Davis*, 547 U.S. at 817, 826-27. In determining that the caller's statements were nontestimonial and therefore admissible, the *Davis* Court considered the following factors: (1) the caller was describing events as they were happening, rather than describing past events; (2) any reasonable listener would recognize that the caller was facing an ongoing emergency; (3) the questions asked of the caller elicited information necessary to resolve the present emergency, rather than information about what had already happened; and (4) the statements were not made in a formal setting. *Id*. at 827-28.

As the primary purpose inquiry considers the totality of the circumstances surrounding the making of a statement, whether or not the perpetrator is absent from the scene of a crime is not dispositive and is simply one factor in the inquiry. *See Wilson v. State*, 296 S.W.3d 140, 147 (Tex.

App. – Houston [14th Dist.] 2009, pet. ref'd) ("We note that [the victim] was questioned separately from the suspect and in an environment that was relatively safe inasmuch as police officers were present. However, we cannot say that the environment was 'tranquil' or that [the victim] provided a deliberate, step-by-step statement such as that involved in *Crawford*.") [internal footnotes omitted]; *Dixon v. State*, 244 S.W.3d 472, 484-85 (Tex. App. – Houston [14th Dist.] 2007, pet. ref'd) (rejecting the defendant's contention "that [the victim's] statements to the 9–1–1 operator were testimonial because [the victim] was not presently being assaulted, was reporting a crime that occurred at a different location, and was willing to wait until the next day to file a police report" and, instead, holding that the victim's statements to the 911 operator were not testimonial where the primary purpose of her statements was to cry for help, to allow the dispatcher to determine if medical assistance was needed, and to allow the dispatcher to assess the potential for a continuing threat to the victim's safety or the safety of the responding officer); *Clark v. State*, 282 S.W.3d 924, 931-32 (Tex. App. – Beaumont 2009, pet. ref'd) (holding that the trial court could reasonably find that the responding officer was still assessing an emergency situation, despite the fact that the defendant was in custody, based on the totality of the circumstances of the scene upon the officer's arrival); *cf. Ramjattansingh v. State*, 587 S.W.3d 141, 161 (Tex. App. – Houston [1st Dist.] 2019, no pet.) (rejecting the DWI defendant's contention that any emergency dissipated once he and the 911 caller pulled into a parking lot and holding that the caller's statements continued to be nontestimonial where "[t]he emergency was not contained because without the police intervention that [the caller] was still seeking, [the defendant] could have wandered off or returned to the road and put himself and others at risk of harm").

*No Deficient Performance*

17

As to the first *Davis* factor regarding whether the caller was describing events as they were happening, we note that Diana was no longer at the location where she was assaulted and had some unknown amount of time to drive herself to the highway in order to escape from Salcido. However, at the outset of her 911 call, Diana stated that she "just got out of the house" and had been assaulted "right now." In addition, the situation was not one in which she was emotionally distanced from the recent assault by her own husband where the 911 call revealed that Diana was still frantic, crying, and speaking loudly and quickly at the time she placed her call. In the habeas court's findings of fact, the court found that Diana called 911 "in a frantic voice, upset and crying" and "was distraught and crying throughout the call." Based on Diana's emotional state demonstrating her immediate concerns and her statements that the assault recently happened, we find that this factor weighs in favor of holding Diana's statements nontestimonial. *See Davis*, 547 U.S. at 827-28.

As to the second *Davis* factor regarding whether a reasonable listener would recognize that the caller was facing an ongoing emergency, Diana was in distress following an assault by her husband in her own home in which she had been hit, struck against the floor, and kicked. The situation was such that Diana found it necessary to leave her home and park in the emergency lane of a highway. We find that this factor also weighs in favor of holding Diana's statements nontestimonial. *See id.*

As to the third *Davis* factor regarding whether the questions asked of the caller elicited information necessary to resolve the situation, the 911 operator's questions here were tailored to obtain pertinent information that would allow responding officers to better address the situation and allow medical assistance to help Diana if necessary. These questions were focused on

determining Diana's location, her situation, her physical welfare, her identifying information, and her assailant's identifying information. The only statements Diana made about the assault itself were responses to brief questions asked by the 911 operator to determine what the situation was and if an ambulance was needed. Therefore, we find that this factor weighs in favor of holding Diana's statements nontestimonial. *See id*.

Finally, as to the fourth factor regarding whether the statements were made in a formal setting, Diana made her 911 call while parked in the emergency lane of a highway and while she was frantic and crying. We thus likewise find that this factor weighs in favor of holding her statements nontestimonial. *See id*.

Based on all the circumstances at the time Diana called 911, along with our findings that all four of the *Davis* factors weigh in favor of holding that Diana's statements to the 911 operator were nontestimonial, we hold that the primary purpose of Diana's statements contained in the 911 call and CAD record was to enable police assistance to meet an ongoing emergency. *See Davis*, 547 U.S. at 827-28 (concluding that the primary purpose of the caller's statements on her 911 call was to enable police assistance to meet an ongoing emergency where all four factors weighed in favor of such a conclusion); *see also Rosenbusch v. State*, No. 03-18-00096-CR, 2018 WL 6837741, at *2 (Tex. App. – Austin Dec. 28, 2018, no pet.) (mem. op.,  not designated for publication) (holding that the 911 callers made their calls primarily to seek help in an emergency where: (1) the assault had just taken place; (2) the victim was injured; (3) the callers did not know the whereabouts of the assailant; and (4) the callers were either explicitly requesting law enforcement and medical personnel or implying that they should quickly come to the scene). As the strongest possible factor favoring a converse holding, we recognize that Diana and Salcido

19

were no longer at the same location because she escaped her own home and drove to the highway as she fled the assault. However, this factor is simply one of many present here, and we do not believe it alone outweighs the other factors in this case. *See Wilson*, 296 S.W.3d at 147; *Dixon*, 244 S.W.3d at 484-85; *Clark*, 282 S.W.3d at 931-32; *cf. Ramjattansingh*, 587 S.W.3d at 161.

Thus, we agree with the habeas court's conclusion of law that these statements were nontestimonial and did not implicate the Confrontation Clause. *See Bryant*, 562 U.S. at 377-78; *see also Clark*, 135 S.Ct. at 2180. We therefore also hold that trial counsel did not render deficient performance by failing to raise a non-meritorious Confrontation Clause objection to Diana's out-of-court statements contained in her 911 call and the CAD record. *See Ex parte White*, 160 S.W.3d at 53; *DeLeon*, 322 S.W.3d at 381 (holding that a defendant must demonstrate the trial court would have committed harmful error in overruling an objection in order to establish ineffective assistance of counsel based on a failure to object). And as Salcido failed to prove deficient performance, we overrule this first part of his ineffective-assistance claim and need not address the prejudice prong here. *See Strickland*, 466 U.S.at 687; *see also Rylander*, 101 S.W.3d at 110 (holding that a failure to prove either *Strickland* prong defeats a claim for ineffective assistance).

### *Failure to Object to Diana's Out-of-Court Statements to Officer Talamantes at Dispatch Location on the Side of the Highway*

#### *Applicable Law*

Responses to preliminary questions by police at the scene of a crime while police are assessing and securing the scene are generally not testimonial. *See, e.g.*, *Villanueva v. State*, 576 S.W.3d 400, 405 (Tex. App. – Houston [1st Dist.] 2019, pet. ref'd); *Duchesneau*, 2019 WL 2455619, at *2; *see also Santacruz v. State*, 237 S.W.3d 822, 828 (Tex. App. – Houston [14th Dist.] 2007, pet. ref'd) ("The Supreme Court also observed that 'initial inquiries' by law

20

enforcement officers arriving at crime scenes involving domestic disputes 'may often' produce nontestimonial statements because 'officers called to investigate . . . need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim.'").

In *Vinson*, the Court of Criminal Appeals suggested a non-exhaustive list of factors to consider when determining whether statements a domestic-violence victim made in-person to a responding officer at the scene of a crime were made during the existence of an ongoing emergency. *Vinson v. State*, 252 S.W.3d 336, 337-39 (Tex. Crim. App. 2008). These factors included the following: (1) whether the situation was still in progress; (2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; (3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; (4) whether the questioning was conducted in a separate room, away from the alleged attacker; and (5) whether the events were deliberately recounted in a step-by-step fashion. *Vinson*, 252 S.W.3d at 339 (citing *Davis*, 547 U.S. at 829-30).

*No Deficient Performance*

As to the first *Vinson* factor regarding whether the situation was still in progress, Officer Talamantes quickly arrived at the scene within about a minute of being dispatched, and Diana told him she had left her house in a hurry. At that moment, Officer Talamantes did not know where the assailant was located but knew that a scared, crying, and "shaken up" woman was parked on the shoulder of the highway with her infant inside the vehicle. The habeas court entered fact findings that Diana was "under emotional distress" and was "shaking and crying" during this initial encounter with Officer Talamantes, as well. Although Diana separated from Salcido just prior to

21

awaiting police assistance on the side of the highway, the circumstances here established the immediacy of the events and her ongoing need for assistance. Thus, we find that this factor weighs in favor of holding Diana's statements as being nontestimonial. *See Vinson*, 252 S.W.3d at 339.

As to the second *Vinson* factor regarding whether the questions sought to determine what was then-presently happening, Officer Talamantes asked only preliminary questions to have Diana identify herself and explain what happened so he could assess the scene. We find that this factor also weighs in favor of holding Diana's statements nontestimonial. *See id*.

As to the third *Vinson* factor regarding whether the primary purpose of the interrogation was to render aid, Officer Talamantes elicited only the most basic information for him to understand what he was dealing with during the brief, minute-long conversation with Diana. The habeas court also entered a fact finding that Officer Talamantes' contact with Diana was "brief[.]" In fact, once he elicited this basic information, Officer Talamantes drove Diana to a nearby hospital—due to her complaint of arm pain and the difficulties posed by the highway noise—rather than immediately having sought a more detailed account of the assault at that point in time. Thus, we find that this factor weighs in favor of holding that Diana's statements were nontestimonial.[3] *See id*.

As to the fourth *Vinson* factor, the questioning was conducted in a location away from the assailant. Simply, this factor weighs against holding that Diana's statements were nontestimonial. *See id*. Yet, as we previously noted, this factor is not dispositive of the inquiry into whether the

---

[3] We question the validity of this factor because, under the U.S. Supreme Court's clarification of the primary purpose test in *Clark*, an out-of-court statement is *always* nontestimonial if the declarant's primary purpose in making the statement is anything other than to create an out-of-court substitute for testimony. *See Clark*, 135 S.Ct. at 2180. Nonetheless, as consideration of this factor does not affect our analysis (and as the State's briefing on this issue utilizes all the *Vinson* factors), we will consider this factor, as articulated by the Court of Criminal Appeals, in this case.

22

statements at issue were testimonial or not. *See Wilson*, 296 S.W.3d at 147; *Dixon*, 244 S.W.3d at 484-85; *Clark*, 282 S.W.3d at 931-32; *cf. Ramjattansingh*, 587 S.W.3d at 161.

As to the last *Vinson* factor, the events were not deliberately recounted in a step-by-step fashion where Diana was still scared, crying, and "shaken up[,]" and where Officer Talamantes elicited only the most elementary information necessary for him to understand the situation before driving Diana to the hospital. This brief conversation between Officer Talamantes and Diana at the side of the highway was different than the more in-depth conversation between the two at the hospital. Thus, we find that this last factor weighs in favor of holding that Diana's statements were nontestimonial. *See Vinson*, 252 S.W.3d at 339.

Based on all the circumstances at the time Diana made her statements to Officer Talamantes on the side of the highway, along with our findings that four out of five of the *Vinson* factors weigh in favor of holding that Diana's statements at that time were nontestimonial, we hold that Diana's statements here were made during the existence of an ongoing emergency. *See Vinson*, 252 S.W.3d at 339; *Rodriguez v. State*, 274 S.W.3d 760, 765 (Tex. App. – San Antonio 2008, no pet.) (holding that the victim's out-of-court statements to a responding officer that she had "escaped" from her house where she had been assaulted by her boyfriend, her exhibition of the injury to her lip, and her out-of-court statement that her boyfriend was probably in the bedroom were not testimonial where: (1) the officer knew he was responding to an alleged assault; (2) the officer was met by the victim who was in obvious distress and holding a child; and (3) the officer's initial questions were objectively designed to determine what was presently happening and to assess the situation).

We therefore agree with the habeas court's conclusions of law on this category of evidence

23

that Diana's statements to Officer Talamantes at the dispatch location were nontestimonial and did not implicate the Confrontation Clause. *See Bryant*, 562 U.S. at 377-78; *see also Clark*, 135 S.Ct. at 2180. We further agree with the habeas court's conclusion of law that trial counsel did not render deficient performance for failing to raise a non-meritorious Confrontation Clause objection to Diana's out-of-court statements to Officer Talamantes made at the time she sought police assistance from the side of the highway, and we so hold. *See Ex parte White*, 160 S.W.3d at 53; *DeLeon*, 322 S.W.3d at 381. And as Salcido failed to prove deficient performance, we overrule this second part of his ineffective-assistance claim and need not address the prejudice prong here. *See Strickland*, 466 U.S. at 687; *see also Rylander*, 101 S.W.3d at 110.

### *Failure to Object to Diana's Out-of-Court Statements Made to Officer Talamantes While Receiving Treatment at the Hospital*

#### *Applicable Law*

Under an ineffective-assistance claim based on trial counsel's failure to object to specific evidence, the admission of the unobjected-to evidence is not prejudicial where other sources of evidence established substantially similar facts as the unobjected-to evidence and where the legal sufficiency of the remaining evidence would be unaffected if the unobjected-to evidence was disregarded. *See Alarcon v. State*, Nos. 13-16-00243-CR, 13-16-00244-CR, 2017 WL 1737958, at *3 (Tex. App. – Corpus Christi May 4, 2017, no pet.) (mem. op., not designated for publication) (holding that the defendant was not prejudiced by admission of certain out-of-court statements by the victim in violation of the Confrontation Clause where "similar evidence" was admitted through other sources at trial); *Irhirhi v. State*, No. 01-14-00002-CR, 2016 WL 7104015, at *5 (Tex. App. – Houston [1st Dist.] Dec. 6, 2016, no pet.) (mem. op., not designated for publication) (holding that the defendant failed to prove the prejudice prong of his ineffective-assistance claim based on

24

trial counsel's failure to make Confrontation Clause objections to the testimony of the responding officer regarding the victim's description of the family-violence assault committed by the defendant where: (1) the jury would have nonetheless heard the recorded 911 call the victim made that provided legally sufficient evidence to prove the assault; (2) the jury would have heard the officer's physical observations of the victim's appearance and demeanor, including the blood on her face; and (3) the jury would have also seen photographs of the victim bleeding from her lip); *see also Jackson v. State*, 487 S.W.3d 648, 660 (Tex. App. – Texarkana 2016, pet. ref'd) (reasoning that the defendant failed to show prejudice where evidence unaffected by the complained-of deficiency of trial counsel was alone legally sufficient to convict the defendant).

### *No Prejudice*

Undoubtedly, Diana's statements to Officer Talamantes at the hospital provided greater details about Salcido's assault compared to her statements to Officer Talamantes during the initial encounter out on the highway. At the hospital, Diana described the conversation that led to Salcido's assault, the exact assaultive acts that she suffered, the sequence in which the assaultive acts occurred, and the event—a fortuitous phone call—that allowed her to escape with her baby.

However, even without this more detailed account of Salcido's assault, the jury was given other evidence that established substantially similar facts. While frantic and crying, Diana told the 911 operator that her husband, Salcido, had committed "domestic violence" in their home by hitting her, striking her against the floor, and kicking her elbow, causing pain. And while still scared, crying, and "shaken up," Diana told Officer Talamantes on the shoulder of the highway that she was assaulted by her husband, that she felt pain to her arm, and that she was worried nothing would be done to help her due to her husband's status as an ex-Las Cruces police officer.

25

Furthermore, Diana's medical records reflected a detailed account of Salcido's assault similar in detail to what she told Officer Talamantes at the hospital. Her medical records reflected that Salcido assaulted her while her infant was at their bedside, that Salcido hit her with his fists, kicked her, pushed her, threw her, and choked her, that she had bruises on her face, neck, stomach, and elbow, and that she reported feeling substantial pain from her injuries.

Moreover, the jury also saw photographs of red marks on Diana's chest and neck. In addition, Officer Talamantes testified that the redness on Diana's neck was consistent with her having been grabbed around the neck and that Diana was cradling her elbow as though it were in pain.

If anything, the introduction of Diana's out-of-court statements to Officer Talamantes at the hospital largely paralleled the other evidence introduced at trial, and we hold that these out-of-court statements did not result in any prejudice. *See Alarcon*, 2017 WL 1737958, at \*3; *Irhirhi*, 2016 WL 7104015, at \*5; *see also Jackson*, 487 S.W.3d at 660. We also observe that, regardless of the introduction of Diana's out-of-court statements made at the hospital, the jury was essentially faced with a decision to convict based solely on hearsay statements from a non-testifying victim and on photographs. The admission of Diana's out-of-court statements made at the hospital could not have changed this crucial decision for the jury to make where Diana's statements at the hospital merely provided more hearsay from the same non-testifying victim whom the jury would still have to decide if they believed regardless. For this additional reason, we fail to see how the introduction of this source of evidence could undermine our confidence in the outcome of the proceeding in order for Salcido to demonstrate the sort of prejudice he needs to show. *See Thompson*, 9 S.W.3d at 812 (defining prejudice as a probability sufficient to undermine confidence in the outcome that

26

but for counsel's errors the result of the proceeding would have been different).

As Salcido failed to prove prejudice, we overrule this last part of his ineffective-assistance claim and need not consider whether trial counsel's performance was deficient. *See Strickland*, 466 U.S. at 687; *see also Rylander*, 101 S.W.3d at 110.

### Conclusion: The Habeas Court did not Abuse its Discretion in Denying Relief on Salcido's Ineffective-Assistance Claims in His Writ Application

Salcido had the burden to prove his ineffective-assistance claims by a preponderance of the evidence. *Ex parte Torres*, 483 S.W.3d at 43. He has failed his burden of showing either deficient performance or prejudice on all three sources of evidence on which he based his failure-to-object ineffective-assistance claims. *See Strickland*, 466 U.S. at 687. Therefore, we ultimately hold that the habeas court did not abuse its discretion in denying relief on Salcido's application for a writ of habeas corpus. *See Ex parte Salim*, --- S.W.3d ---, 2020 WL 241967, at *6; *Ex parte Garcia-Escontrias*, 2019 WL 6713282, at *2 (cases reviewing the trial court's ruling on a writ application for an abuse of discretion); *see also Ex parte Beck*, 541 S.W.3d at 852 (instructing that an appellate court must uphold the trial court's ruling on a writ application if it is correct on any theory of law applicable to the case). We consequently overrule his sole issue presented for review.

### CONCLUSION

The habeas court's judgment is affirmed.

GINA M. PALAFOX, Justice

April 14, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

27